Whittington v. Flint.

## Whittington v. Flint.

1. Mortgage: *Release of part of mortgaged lots by mortgagee.*
   A release by a mortgagee of part of the mortgaged premises after the sale of the other part by the mortgagor, will not prejudice the lien for the whole debt on that part, unless at the time of the release the mortgagee had actual notice of the sale.

2. Mortgage : *Estate of mortgagee.*
   The legal estate in mortgaged property passes to the mortgagee, subject to be defeated by performance of the conditions of the mortgage; and the right of possession follows the legal title, unless controlled by stipulations in the deed, or by the apparent intention of the parties.

3. Mortgage : *Adverse possession: Cases approved and overruled.*
   The doctrine announced in *Harris v. King*, 16 *Ark.*, 122; *Birnie v. Maine*, 29 *Ark.*, 591; and in *Coldcleugh v Johnson*, 34 *Ark.*, 312, as to adverse possession against a mortgagee, is approved; and the cases of *Sullivan v. Hadley*, 16 *Ark.*, 129; *Guthrie v. Field*, 21 *Ark.*, 371; *McGeehe v. Blackwell*, 28 *Ark.*, 27; *Hall v. Denckla, Ib.*, 506; and *Mayo v. Cartwright*, 30 *Ark.*, 407, so far as they hold that adverse possession may be set up by a mortgagor or his vendee with notice, without a distinct denial of, or acts inconsistent with the mortgagee's title, are overruled.

4. Mortgage: *Statute limitations: Adverse possession.*
   Possession of the mortgagor, or his privies, including his grantees

with notice, will not be adverse, nor bar an action by the mortgagee for foreclosure, or for possession of the land, unless there has been an open and explicit disavowal and disclaimer of holding under the mortgagee's title, and assertion of title in the holder brought home to the mortgagee. The mere taking possession by the vendee of the mortgagor, and continued occupancy by him and his vendees for the period of the statutory bar; their open control and improvement of the land, and payment of taxes thereon as their own absolute property, with the intention of holding it against all comers, will not bar the action.

APPEAL from *Pulaski* Circuit Court.

Hon. J. W. MARTIN Circuit Judge.

*U. M. & G. B. Rose* for appellant.

In order to bar the claim of a mortgagee there must be an open, notorious and adverse possession. *Birnie v. Maine,* 29 *Ark.,* 591. In this case there was no adverse holding; no disclaimer of appellant's title.

The mortgagor until foreclosure has a right to hold the mortgaged premises, and unless he or those claiming under him does some open unequivocal act, sufficient to put the mortgagee upon his guard and warn him of the necessity of prompt action, the statute will not run, though upon general principles of equity he might be precluded from asserting his demand after twenty years. See also *Coldcleugh v. Johnson,* 34 *Ark.,* 312, in which the doctrine of *Birnie v. Maine* was re-affirmed, also *Medley v. Elliott,* 62 *Ill.,* 532; *Martin v. Jackson,* 27 *Penn. St.,* 504.

*John M. Moore and C. B. Moore* for appellees.

The release by Whittington of a part of the mortgaged premises (to the value of over $6,000.) thus throwing an additional burden on the lot in controversy, discharged

it *pro tanto*, to the extent of at least $6,000., from the lien of the mortgage.   6 *Paige*, 35; 14 *Wis.*, 307; 27 *Iowa*, 361.

The appellees and their vendors have been in actual, open, notorious, adverse possession and occupancy of the lot from the 1*st of May* 1869, and were in such open, adverse possession when this suit was commenced, *April* 4, 1878, more than nine years, and appellant is barred by the statute of limitation of seven years.   The debt was barred, so far as appellees were concerned in 1877, when Whittington foreclosed; and these appellees were not parties to that suit, nor bound by it.

Under the doctrine in *Mayo & Jones v. Cartwright*, 30 *Ark.*, 407, payments by Woodruff did not revive the debt against appellees.   They were not parties to the foreclosure suit, and the statute bar had attached when Woodruff made the payment May 24th, 1871, over thirteen years after the last prior payment of May 1st, 1858, and counting out the period of the war, over eight years between payments.   In *Birnie v. Maine* the original mortgagor was the defendant in possession pleading the statute.   In *Coldcleugh v. Johnson* the mortgaged premises had passed to the heirs of the mortgagee, and the court approved of the ruling in *Birnie v. Main* as between mortgagor and morgagee.   But the court quotes and adopts this passage from note on p. 604 of 5 Bam. & Add.   If the tenancy "be determined by death of the mortgagor, and his heirs or devisees enter and hold without any recognition of the mortgagee's title by payment of interest or other act, an adverse possession may be considered to take place."

In *Hall v. Denckla*, 28 *Ark.*, 506, which was a proceeding against the heirs at law of the original vendee under a bond for title, the court applied the bar upon the possession for the statutory period.

Whittington v. Flint.

SMITH, J. Whittington, on the first of April, 1878, brought ejectment against Flint and his tenants for a lot in the City of Little Rock. He claimed under a mortgage executed by William E. Woodruff, Sr., in the year 1853, and under a Master's sale and conveyance to him made pursuant to a decree of foreclosure. The mortgage had been recorded in due season in the proper office, and embraced other lots beside the one in controversy. The bill for foreclosure, to which the mortgagor was the sole defendant, was not filed until 1877; but the mortgagor had made partial payments on the debt in 1858, in 1871 and in every successive year thereafter down to and including 1876.

The defendant's chain of title consisted of the following links: In 1869 William E. Woodruff, Sr., sold and by bond obliged himself to convey this same lot to William E. Woodruff, Jr., or his assigns on receipt of the purchase price. Woodruff Junior afterwards re-sold one-half of the lot to Blocher and the other half to Adams. And to them Woodruff Senior, on the 29th of July, 1872, conveyed their several parts by deeds with covenants of general warranty. Blocher subsequently acquired Adams' half and in 1874 mortgaged the whole lot to Flint. At the sale under this mortgage, Flint purchased and received a conveyance. All of the instruments except the bond for title, were put upon the public records soon after they were made.

The defendant relied upon the statute of limitations and adverse possession for a period of more than seven years. His answer also averred that the plaintiff had, in 1870, released the other lots described in his mortgage from the lien and operation thereof. The truth of this last mentioned allegation is admitted in the agreed statement of facts upon which the case was tried. But as it is not alleged

1. Release of part of mortgaged property. Effect on balance.

Whittington v. Flint

nor shown that when the release was made the plaintiff had actual notice of the prior sale to Woodruff Junior, the circuit court, to which the cause was submitted without calling a jury, properly ignored this defence as an immaterial issue. *Birnie v. Main,* 29 *Ark.,* 591; *Jones on Mortgages, Sec.* 981.

*The facts set up as constituting adverse possession and held insufficient.* It was also agreed that Woodruff Junior had taken possession on the first of May, 1869, and that he, and those claiming under him, had been in the continuous occupancy of the premises ever since; during which time they had openly controlled and improved the same, and had paid taxes thereon as their own absolute property, with the intention of holding it against all comers.

The court was asked to declare, that, upon the facts agreed upon, there was no such open and notorious denial of the mortgagee's title as would constitute an adverse holding. But this request was refused and the law was declared to be, that upon the admitted facts, the holding of the defendant and his grantors, immediate and remote, had been adverse since May 1, 1869, and the statute of limitations began to run against the plaintiff from that date. And judgment was given for the defendant.

Upon the acquisition of title by adverse possession, when a relation of trust or privity of estate subsists between the parties, the previous decisions of this court are in a state of hopeless confusion. From these decisions no one interested in an estate incumbered by an old, but unsatisfied mortgage, can tell what his rights and obligations are. He can not with safety purchase, sell or improve. And no lawyer can, with any confidence, give advice to his client under such circumstances. He can only inform him that if litigation arises about it, and the suit is brought in, or removed to, the Federal Court, the rule of decision will be one way; while if it is pending in the State courts, it will depend on the indi-

Whittington v. Flint.

vidual views of the trial judge and the members for the time being of the appellate court. This is an intolerable condition of things. It therefore behooves us to make our reckonings and to take observations with a view to determine to what point we have drifted.

In *Harris v. King*, 16 *Ark.*, 122, a vendor of land received the purchase money, gave his vendee a bond for title, and died in possession without ever having done an act inconsistent with his vendee's title. His administrators sold the land as part of his estate. Upon a bill filed by the first vendee, more than ten years after the transaction for specific performance, and to annul the deed made by the administrators, it was ruled that the original vendor held the naked legal title in trust for the vendee; that the purchaser at administrator's sale stood in the same situation, and the statute of limitations was no bar. True, there was in the bill an allegation, and in the evidence some proof, that the vendee had constituted the vendor his agent in respect to the land. But the case was not decided on the doctrine of agency, but on the broad ground that the statute does not run against an express trust, so long as the trustee does not deny the rights of his *cestui que* trust.

*Statute of limitations: Adverse possession. Former decisions reviewed—*

Singularly enough the very next case in 16 *Ark.*, at page 129, *Sullivan v. Hadley*, proceeds upon an entirely different principle. The circumstances were these: A debtor in Tennessee had, for the better securing of his creditors, executed a deed of trust upon slaves and other personal property. He had afterward emigrated to this State and, by permission of his trustee, had brought the slaves with him; but the deed of trust was recorded in the county which he selected for his new residence. The maker of the trust deed had never denied the trustee's right to the slaves, but on the contrary had used the trust deed both in Tennessee and in Arkansas, to keep his unsecured creditors at bay.

Upon a bill filed by the trustee to foreclose the trust deed, less than nine years after it was made, this court held that five years peaceable possession of the slaves barred all relief. In other words the court presumed without evidence and indeed when the facts all pointed the other way, that the possession of the creator of the trust was hostile to the title of the trustee. This was to confound actual possession with adverse possession.

In *Conway v. Kinsworthy*, 21 *Ark.*, 9, the owner of an unlocated donation claim had executed an instrument, which was duly acknowledged and recorded, reciting that he had sold his claim and covenanting to convey the legal title to the lands to be entered with it, as soon as the patent was issued. The lands were afterwards located and a patent issued; but the patentee instead of making a deed to the persons to whom he had sold his claim, sold and conveyed the land to another party. Upon a bill filed thirteen years afterward to establish title under the first sale, against one who claimed under the second sale, it was held too late. Here the trustee had disavowed the trust; and this, according to all the cases, set the statute in motion.

*Guthrie v. Field*, 21 *Ark.*, 379, follows *Sullivan v. Hadley*, and holds that a mortgagor of real estate, being in possession, may rely upon lapse of time as a defence to a bill to foreclose, brought more than ten years after the date of the mortgage.

In *Trapnall v. Burton*, 24 *Ark.*, 371, it was adjudged that the possession of a defendant in execution, who continues to hold over after a sale of land without any agreement to hold under the purchaser, is adverse and the purchaser is barred if he does not gain actual possession in ten years.

In *Lewis v. Boskins*, 27 *Ark* , 61, it was ruled that wher land is sold on a credit and bond is given to make title on payment of the purchase price, the transaction is the same,

Whittington v. Flint.

in legal effect, as if the vendor had conveyed the land by absolute deed and had taken a mortgage back; that the vendor's lien under such circumstances exists as a charge upon the land, binding not only the vendee, but his privies in law, blood and estate; and that the vendee cannot, so long as he retains possession, deny his vendor's title.

*McGeehee v. Blackwell,* 28 *Ark.,* 27, and *Hall v. Denckla, Ib.,* 506, proceed upon the idea that when, upon a sale of land, the vendor retains the legal title as security for the purchase money, a bill to foreclose must be brought within the time limited by law for bringing an action of ejectment, which by act of January 4, 1851, (*Gantt's Dig., Sec.* 4113,) was shortened to seven years.

*Birnie v. Main,* 29 *Ark.,* 591, returns to the old doctrine of Harris v. King, that in order to constitute an adverse holding in favor of the mortgagor, there must be an open and notorious denial of the mortgagee's title, and that until such denial the possession of the mortgagor is the possession of the mortgagee.

In *Mayo v. Cartwright,* 30 *Ark.,* 407, a debtor had given a deed of trust upon a plantation to secure the payment of a debt. The deed was registered in the proper office. The debtor, who had remained in possession, in a year or two, sold and conveyed the plantation for a full consideration, and with covenants of warranty, to a stranger, who had no actual knowledge of the previous incumbrance, but was chargeable with constructive notice by the registry.

The purchaser entered, cultivated the plantation, took the rents and profits, made valuable improvements and paid the taxes. The debtor made payments from time to time on the debt secured by the trust-deed. Eleven years after the sale to the stranger, but not over six years since the secured creditor had received a payment on his debt, the trustee advertised the property for sale under a power contained in the

deed. The purchaser enjoined the sale upon the ground that he had been in the adverse enjoyment of the premises for more than seven years. And the court held that the trustee had slept upon his rights too long. The course of reasoning by which this result was reached was as follows. From uninterrupted and exclusive occupation and the exercise of acts of dominion over the land, the court assumed that the purchaser's possession was adverse to those claiming under the trust-deed; and the makers of the trust-deed having parted with all interest in the land, his subsequent payments on the debt, while reviving the debt against himself, could not bind the land, being *res inter alios acta.* The only authority cited was *N. Y. Life Ins. Co. v. Covert,* 29 *Barber,* 435, a decision of the Supreme Court of New York, which was reversed by the Court of Appeals, (6 *Abbott's Pr. Rep., N. S.,* 154,) and the rule declared to be that the presumption of payment arising from the lapse of twenty years since the cause of action accrued, is not available to the owner of the equity of redemption, to defeat the foreclosure, if the mortgagor has made payments upon the mortgage debt within twenty years before the commencement of the suit; and that if the mortgage is recorded, the grantee of the equity of redemption takes his title subject to the lien of the mortgage, and the mortgagor still has the power to prevent the exoneration of the land through lapse of time by making partial payment. See also *Heyer v. Pruyn,* 7 *Paige,* 465, for the rule upon this subject in New York.

*Coldcleugh v. Johnson,* 34 *Ark.,* 312, follows *Birnie v. Main,* and announces that the possession of a vendee by title-bond is not adverse, and the statute will not begin to run for his protection until there has been an open and notorious denial of his vendor's title.

These are the principal cases in our reports on this subject, and it is manifest from a brief review, that they have

been decided without much reference to each other, and that there is in this State nothing like a settled rule of property to guide us. So notorious is this fact that the Federal courts, which ordinarily follow the State courts in matters affecting real estate and in the construction of State statutes, have refused to follow our oscillations on this point, but have always adhered to the rule as first laid down in *Harris v. King, supra*. Thus in *Lewis v. Hawkins*, 23 *Wall.*, 119, there was a sale of land in this State by bond for title in 1853. In 1855 the vendee sold and conveyed to a stranger, who entered and held possession until his death in 1866, and after his death his widow and children continued to occupy the premises. In 1871, a bill was filed to enforce the vendor's lien for the purchase money due upon the sale in 1853. The defence was seven years possession under the statute. And the court held that the vendee, or a purchaser from him, stood in the relation of a trus'ee to the vendor for the unpaid purchase money, against whom the statute does not run. In this case the sub-purchaser had assumed the payment of the original purchase notes. But the suit was brought some sixteen years after such assumption, and the decision did not turn on this feature.

See also *Butler v. Douglass*, 1 *McCrary*, 630, where it is stated that a bill to foreclose a vendor's lien for purchase money on real estate, is not barred under twenty years.

If there were any established rule applicable to this case, we should follow it, however unreasonable it might appear to us ; leaving the legislature to devise a remedy, which in that event would only operate prospectively. For the alteration by courts of rules of property affecting the transfer of real estate and the consequent disturbance of titles acquired in faith of the stability of those rules is a very grave matter. A rule of decision once deliberately adopted and declared ought not to be dis-

33———43

turbed "by the same court, except for very cogent reasons and upon a clear manifestation of error." But there are cases which "ought to be examined without fear, and revised without reluctance, rather than to have the character of our law impaired, and the beauty and harmony of the system destroyed by the perpetuity of error." 1 *Kent's Comm.*, 476-7.

Turning to the adjudications elsewhere, it is not difficult to discover what the law is on this subject. Thus *Hall v. Doe*, 5 *Barn. & Ald.*, 687, (7 *E. C. L. R.*, 232) decided in 1822, was a case where premises were mortgaged in fee, with a proviso for reconveyance, if the principal were paid on a given day, and in the meantime the mortgagor should continue in possession. Upon special verdict it was found that the principal was not paid on the day named, but that the mortgagor remained in possession. There was no finding by the jury either that interest had or had not been paid by the mortgagor. Under these circumstances, it was held by the Court of King's Bench, that the occupation was by permission of the mortgagee; and consequently that although more than twenty years had elapsed since default in the payment of the money, still the mortgagee was not barred by the statute of limitations. It was further held that an entry by the mortgagee was not necessary to avoid a fine levied by the mortgagor.

See also *Doe d. Jones v. Williams*, 5 *A. & E.*, 291, (31 *E. C. L. R.*, 619), decided in 1836, and *Doe d. Palmer v. Eyre*, 17 *A. & E.*, *N. S.*, 366, (72 *E. C. L. R.*) A. D. 1851.

In Chinnery v. Evans, 11 *H. L.*, 115 (A. D. 1864), M. was possessed of estates in three counties, Cork, Kerry and Limerick. In 1776 he mortgaged them to F. The interest on the mortgage was not regularly paid, and on petition of F. a receiver was appointed. In form his

appointment embraced the three estates; in fact he never entered into possession of any but the Limerick estate, from which alone he took the money necessary to keep down the interest on the mortgage. M., in 1789, without any knowledge of the matter on the part of F. sold the Cork and Kerry estates to C., who entered, continued in uninterrupted possession until his death in 1808, and his son had succeeded to the property. In 1856, after the lapse of nearly twenty years since the last payment made by the receiver, F. claimed to have a sale of all the estates included in the original mortgage in order to cover arrears of inter- est. And it was held that the payment by the receiver out of the rents of the Limerick estate, was a payment which in law must be considered as made by the mortgagee in respect of the mortgage debt and therefore prevented the statute of limitations operating as a bar to the demand as to any of the estates comprised in the mortgage.

In *Pugh v. Heath*, 7 *Appeal Cases*, 235 ; *S. C.*, 35 *Monk's Eng. Rep.*, 172, the ultimate facts are thus stated by Earl Cairns : " A legal mortgage of free hold land in 1856 ; no possession by the mortgagee ; and no payment of prin- cipal or interest to him ; nor any acknowledgment of his title. Then in 1870, that is, after fourteen years, the mortgagee filed a bill to foreclose. He obtains a decree *nisi* in 1874 and a decree absolute in 1877. Then in 1878 he brings the present action to recover possession of the land." The defence was the statute of limitations. And it was held that, although brought more than twenty years after the date of the mortgage, the action was not barred.

In *Higginson v. Mien*, 4 *Cr.*, 414, the facts were as fol- lows : In 1769, Alexander Wylley, then residing in

Georgia, executed his bond to certain merchants of London, and to secure the payment of the same, also executed his deed of mortgage, which was recorded. Wylley took part with the British in the war of the revolution, in consequence of which his estate was confiscated and commissioners were appointed to take possession of and sell it. In 1784 the mortgaged premises were sold and conveyed by the commissioners to certain persons, who re-sold and conveyed them to one Houston, who retained peaceable possession of them until his death. In 1796 these lands were sold under execution to satisfy a judgment obtained against the executor of Houston. A bill was filed in 1802 to enforce payment of the debt due from Wylley by foreclosure of the mortgage. And it was held, Marshall, C. J. speaking for the court, that the estate of the mortgagor only was confiscated, not that of the mortgagee ; that the possession of the mortgagor and of those claiming through him, was not adverse to, but compatible with, the rights of the mortgagee and consequently the statute of limitations did not apply.

In *Hughes v. Edwards*, 9 *Wheaton*, 490, the bill was filed in 1816, to foreclose a mortgage executed in 1793. The mortgagor had alienated parts of the mortgaged premises to various parties, all of whom had purchased with constructive notice of the plaintiff's lien, the mortgage deed having been duly recorded. The defendants relied on the length of time and uninterrupted possession of the premises, from the date of the mortgage, by the mortgagor or those claiming under him. But it was proved that the mortgagor had made payments on the debt in 1798, in 1803, and in 1808, and had acknowledged in letters that the mortgage still subsisted, that the debt was unpaid and promising to pay it when in his power. And it was ruled that the mortgage was not barred as against the mortgagor, and that a purchaser from him with notice, could only protect himself by lapse of time

Whittington v. Flint.

under the same circumstances which would afford protection to the mortgagor. Said the court *per* Mr. Justice Washington: "But it is insisted that although these acknowledgments may be sufficient to deprive the mortgagor of the right to set up the presumption of payment or release, they cannot affect the other defendants, who purchased from him parts of the mortgaged premises for a valuable consideration. The conclusive answer to these arguments is that they were purchasers with notice of this incumbrance. * * * * His conveyance to a purchaser with notice passes nothing but the equity of redemption, and the latter can no more than the mortgagor, assert that equity against the mortgagee without paying the debt or showing that it has been paid or released."

And so the rule is laid down in the text-books. Thus in 2 *Wash on Real Prop.*, 3rd. Ed., 158: "He (the mortgagor) can not make any lease or conveyance which can bind the mortgagee, or prejudice his title * * * * So long as the mortgagee does not treat the mortgagor as a trespasser, the possession of the mortgagor is not hostile to, nor inconsistent with, the mortgagee's right. The possession of the mortgagor is, to this extent, the possession of the mortgagee."

In *Jones on Mortgages, Sec.* 676 : "A mortgagor has a perfect right to convey his equity of redemption. * * * * Of course the mortgagee is not affected by any act of the mortgagor in passing any right of his in the premises to third persons, whether by deed, or by confession of judgment, or otherwise. The mortgagor's assignee has no greater rights than the mortgagor himself; and the construction of the mortgage is the same in every respect, whether the mortgagor has conveyed the equity of redemption or not. Neither can the mortgagor and his grantee, by any subsequent arrangements between themselves, affect the mortga-

gee's lien, or prevent its operating to the full extent con-
ferred by the mortgage."

Again at section 1202: "The grantee (of the mortgagor)
succeeds to the estate and occupies the position of his grantor.
He takes subject to the incumbrance; and his title and pos-
session are no more adverse to the mortgagee than was the
title and possession of the mortgagor. * * * A pur-
chaser from the mortgagor stands in no better position than
the mortgagor himself as to gaining title by possession and
lapse of time, if the mortgage be recorded. The record is
notice of the mortgage to a subsequent purchaser; and the
mere fact that he has had actual possession under his pur-
chase for the statute period of limitation is no bar to a fore-
closure."

In *Sedgwick & Wait on Trial of Title to Land, Section* 751,
the law is stated thus: Whenever such a relation, or trust,
or privity of estate exists between the actual occupant of the
land and another, that, in respect to possession, there is
between them an identity or subordination of interests, then
the possession of one—the occupant—becomes, as in the
case of a co-tenancy, the possession of the other, through the
principle of agency or trust. * * * * * Such rela-
tion, privity or trust, must be explicitly renounced
or disclaimed by declarations or acts. unmistakably hos-
tile to it, and an exclusive adverse claim asserted
before the possession of the occupant can be consid-
sidered adverse. In other words there must be a concur-
rence of two things: A repudiation of the previously exist-
ing relation, and an assertion of an appropriation by the
occupant for himself, accompanied, of course, by an actual,
exclusive occupation." See also *Sections* 729, 749; and com-
pare 4 *Kent Comm.*, *157; *Angell on Limitations, 6th Ed.,
Ch.* 34.

In Massachusetts, where the same incidents attach to a

Whittington v. Flint.

mortgage as in this State, the court in *Pike v. Goodman*, 12 *Allen*, 472, say : "We do not mean to intimate that the holder of the original mortgage, having received the payment of interest exclusively from the owner of a part of the equity of redemption *for any number of years*, would by that fact alone be precluded from subjecting to a foreclosure the whole property which his mortgage covered. His interest being regularly paid by a person in possession of a part of the land, he would have no reason to know or to inquire from whom it came, or to know what grants of the estate had been made by the mortgagor." See also *Bacon v. McIntyre*, 8 *Metc.*, 87 ; *Parker v.Banks*, 79 *N. C.*, 480.

And this is the law so far as we are advised, in all of the States where a mortgage carries the legal title, except Mississippi. There, it seems, the possession of the mortgagor, after condition broken, is prima facie adverse to the mortgagee. Of course the question of adverse possession can not arise at all in favor of a mortgagor in possession against a mortgagee in those States, where the latter's interest is considered a mere chattel interest and not an interest in the land. For there, the mortgagee is, under no circumstances, entitled to the possession. But with us the legal estate in mortgaged property passes to the mortgagee, subject to be defeated by performance of the conditions of the mortgage ; and the right of possession follows the legal title, unless controlled by stipulations in the deed, or the apparent intention of the parties. *Fitzgerald v. Beebe*, 7 *Ark.*, 310 ; *Kennedy v. McCarrow*, 18 *Id.*, 166 ; *Gilchrist v. Patterson*, *Ib.*, 575 ; *Terry v. Rozelle*, 32 *Id.*, 478 ; *Reynolds v. Canal Co.*, 30 *Id.*, 520.

Mr. Justice Story in *Conard v. Atlantic Ins. Co.*, 1 *Pet.*, 441, says : " It is true that in discussions in courts of equity, a mortgage is sometimes called a lien for a debt. And so it certainly is, and something more ; it is a transfer of the

*[margin note:* Estate of mortgagee.*]*

property itself, as security for the debt. This must be admitted to be true at law; and it is equally true in equity; for in this respect, equity follows the law. It does not consider the estate of the mortgagee as defeated and reduced to a mere lien, but it treats it as a trust estate, and according to the intention of the parties, as a qualified estate and security. When the debt is discharged, there is a resulting trust for the mortgagor. It is therefore only in a loose and general sense that it is sometimes called a lien, and then only by way of contrast to an estate absolute and indefeasible."

The sale and conveyance of the lot by the senior Woodruff, the putting of the purchaser in possession and the subsequent improvement of it by building upon it, were not sufficient to set the statute running. Such acts did not import any denial of Whittington's title, nor apprise him of any hostile claim.

There is nothing peculiar in our statute limiting actions for the recovery of land, except that it does not contain the word "possession" at all. But adverse possession on the part of the defendant is as much implied in the statute as if it had been expressed. With this understood, the language is not so strong as the statute of Illinois, which enacts that every person in the actual possession of land, under color of title, for the space of seven years, and who has during that time paid the taxes, shall be deemed the legal owner, to the extent and according to the purport of his paper title. Yet in *Medley v. Elliott*, 62 *Ill.*, 532, it was held, "That the grantees of a mortgagor are not protected in their title against a foreclosure of the mortgage duly recorded, by seven years possession and payment of taxes under the first section of the act of 1839.

" From the peculiar relation of mortgagor and mortgagee, and the fact that a purchaser from the former succeeded to his rights with notice of the incumbrance and the conse-

quent privity between the parties, the possession of such purchaser, must be considered in subordination to such mortgage, and not adverse; and it cannot cease to be of that character until there is an open disclaimer of holding under it, and the assertion of a distinct title with the knowledge of the mortgagee." See also *Martin v. Jackson*, 27 *Pa. St.*, 504.

The doctrine announced in Harris v. King, in Birnie v. Main and in Coldcleugh v. Johnson is approved. The cases of Sullivan v. Hadley, of Guthrie v. Feild, of Hall v. Denckla, of McGeehee v. Blackwell, and of Mayo v. Cartwright, in so far as they hold that an adverse possession may be set up by a mortgagor, or a purchaser from him with notice, without a distinct denial of, or acts inconsistent with, the mortgagee's title, are overruled. The true rule is stated in *Zeller's Lessee v. Eckert*, 4 *How.*, 289; "Where the original possession by the holder of land is in privity with the title of the rightful owner, in order to enable such holder to avail himself of the statute of limitations, nothing short of an open and explicit disavowal and disclaimer of holding under that title, and assertion of title in himself brought home to the other party, will satisfy the law."

<span style="float:right">ADVERSE POSSESSION: Cases approved and overruled.</span>

<span style="float:right">The correct rule stated.</span>

An "overt act of hostility" is required to set the statute in motion in favor of a mortgagor, or his vendee, against a mortgagee out of possession. *Boyd v. Beck*, 29 *Ala.*, 703.

Reversed and remanded for a new trial.