VERNON *v.* LINCOLN NATIONAL LIFE INSURANCE COMPANY.

4-5828                                              138 S. W. 2d 61

Opinion delivered March 11, 1940.

*T. B. Vance,* for appellant.

*H. M. Barney* and *Frank S. Quinn,* for appellee.

MEHAFFY, J. On November 29, 1928, H. S. Dorsey and wife executed a deed of trust upon the lands in con-

troversy to secure an indebtedness of $27,700. This debt was not paid, and on February 9, 1935, Dorsey and wife conveyed the lands to appellant, J. B. Vernon, by quitclaim deed, which deed was duly recorded. The deed of trust given in 1928 was also duly recorded.

On November 26, 1935, suit was brought upon said deed of trust to foreclose the same, and the appellant, J. B. Vernon and Mrs. J. B. Vernon, were made parties to the action. Decree was entered in said suit on February 28, 1936, foreclosing said deed of trust and ordering the lands sold, and thereafter, on March 15, 1937, sale of said lands was made by the commissioner of the Miller chancery court, at which sale the Lincoln National Life Insurance Company became the purchaser. Said sale was reported on March 22, 1937, and was by the court approved and confirmed, and commissioner's deed was on said day executed and approved by the court and delivered to the Lincoln National Life Insurance Company. All the rights, title, interest and claim of J. B. Vernon were, by the decree entered in said cause, declared subordinate and inferior to the right of the Lincoln National Life Insurance Company under the deed of trust, and said lands were ordered sold free, clear of, and discharged from any right, title, or claim of Vernon.

In August, 1937, the Lincoln National Life Insurance Company filed a petition for a writ of assistance against J. B. Vernon for possession of the tract of land involved in the case, and answer was filed thereto by J. B. Vernon, in which he stated that he was not served with personal process in the foreclosure suit, but was served by publication of a warning order, and that he had two years from the date of decree in which to appear and file an answer; that he bought the lands in question from Dorsey on February 9, 1935, and received a quitclaim deed thereto on that date; that he had no knowledge of any mortgage or incumbrance upon the land at the time of his purchase and that he went into possession of the land and in good faith placed valuable improvements thereon, clearing 30 acres of land, building wire fences, posts, one two-room house, cypress log barn, barn lot,

chicken house, etc., of the value of $1,178.80, and prayed that the writ of assistance be denied, and, in the alternative, that judgment be rendered in his favor for the value of the improvements and betterments placed on the land.

The Lincoln National Life Insurance Company dismissed its application without prejudice.

On March 10, 1939, a new application, the one in this case, was filed by the appellee. Answer thereto was filed by appellant, in which he set up the same defenses as contained in his first answer, except that the answer placed the value of the alleged improvements at $1,029.

There was a hearing had, and it was decreed that Jack Robert Stewart and wife who are in possession of the land should retain the land until the crops put in upon the lands had been harvested, and that upon the gathering of the crops, and not later than December 31, 1939, possession should be delivered to the appellee. The court further decreed that the appellant should be permitted to move the improvements placed on the lands by him, and should have a period of six months in which to remove them, and further found that Vernon had paid taxes for the years 1935, 1936, and 1937 in the amount of $32.71, and for the year 1934, the amount of $13.54, which taxes, with interest, should be recovered by appellant, and rendered judgment in favor of appellant for the removal of said improvements and for the payment of taxes. The case is here on appeal.

The appellant states that the issue on this appeal is resolved into two questions, as follows:

"First: Does the act of March 8, 1883, §§ 1-5, inclusive, p. 106, §§ 4658-4662, Pope's Digest, commonly called the Betterment Act, apply only against plaintiffs who have an absolute title, by deed or otherwise to lands, but not applicable as against one who holds land under a court commissioner's deed by reason of being the purchaser at a mortgage foreclosure sale?

"Second: Is a non-resident defendant who is without actual notice of a mortgage foreclosure suit, but who has been served by irregular constructive service, but

made no appearance nor defense in said suit, barred from appearing within two years and asserting his defense to the original suit in answer to an application for a writ of possession by the plaintiff purchaser at such foreclosure sale?''

The appellee paid, and appellant accepted, the taxes and interest, so that the only question involved in this appeal is whether appellant was entitled to the improvements that he alleges he put on the land in good faith. The court permitted him to remove the improvements within six months. It is, therefore, unnecessary to consider the second proposition.

The question is, was the appellant entitled to receive from the appellee the value of his improvements? Appellant received a quitclaim deed long after the deed of trust was given and recorded. He says he went to two lawyers and they told him they thought the title was good; but anyone could have ascertained by looking at the record, that his title was subject to the mortgage to the appellee. But he contends that he was on the place in good faith, and relies on § 4658 of Pope's Digest. That section reads as follows: ''If any person, believing himself to be the owner, either in law or equity, under color of title, has peaceably improved, or shall peaceably improve, any land which upon judicial investigation shall be decided to belong to another, the value of the improvement made as aforesaid and the amount of all taxes which may have been paid on said land by such person, and those under whom he claims, shall be paid by the successful party to such occupant, or the person under whom or from whom he entered and holds, before the court rendering judgment in such proceedings shall cause possession to be delivered to such successful party.''

Appellant cites and relies on *Beard* v. *Dansby*, 48 Ark. 183, 2 S. W. 701. That case holds that constructive notice is not sufficient to preclude the occupant from recovering for improvements if he, in fact, purchased in good faith and under the supposition that he was obtaining a good title in fee. Appellant no doubt purchased in good faith, but he knew he was not getting a

title in fee. He accepted a quitclaim deed, which of course conveyed to him all the right, title and interest which the grantor had. There was no defect in this title, but it was taken subsequent to the deed of trust and he acquired no more right than the mortgagor had.

Appellant cites several other authorities, but we do not deem it necessary to discuss them for the reason that his title, like that of the grantor, was subject to the mortgage. The mortgagor had an absolute right to convey his equity of redemption, but this did not and could not effect the rights of the mortgagee.

In the case of *Austin* v. *Federal Land Bank of St. Louis,* 188 Ark. 971, 68 S. W. 2d 468, the appellant had bought a half acre of land and received a warranty deed. He built a house on it, and when the mortgage was foreclosed, he contended that he was entitled to the value of his improvements. He did not actually know the mortgage existed, and the appellee, bank, argued that it was entitled to the benefit of this enhancement in value because neither the common law nor the Betterment Act protects it. The court said: "Perhaps not, but equity should mold a remedy if it can be done without injury to appellee. This can be done by permitting appellant to move the cottage off the land within a reasonable time, and we are of the opinion that he should have six months in which to move same."

"A mortgagor has a perfect right to convey his equity of redemption, or any interest in it; and although he thereby obliges the mortgagee to make his grantees parties to a suit to foreclose the mortgage, his conveyances can not be considered fraudulent against the mortgagee as tending to hinder and delay him. But he can convey nothing more than his equity of redemption; his assignee takes merely the rights of the mortgagor under the mortgage. This is the case with the second mortgagee, as well as with the absolute purchaser.

"Of course the mortgagee is not affected by any act of the mortgagor in passing any right of his in the premises to third persons, whether by deed, or by con-

fession of judgment, or otherwise. He can not bind the mortgagee by any contract or deed prejudicial to his title. He can not create an easement in the land to the prejudice of the rights of the mortgagee. Any rights in the mortgaged property which are acquired through the mortgagor are subject to the lien of the mortgage." Vol. 2, Jones on Mortgages (Eighth Edition), § 836.

In the case of *Whittington* v. *Flint*, 43 Ark. 504, this court, quoting from Jones on Mortgages, stated: "A mortgagor has a perfect right to convey his equity of redemption. . . . Of course the mortgagee is not affected by any act of the mortgagor in passing any right of his in the premises to third persons, whether by deed, or by confession of judgment, or otherwise. The mortgagor's assignee has no greater rights than the mortgagor himself; and the construction of the mortgage is the same in every respect, whether the mortgagor has conveyed the equity of redemption or not. Neither can the mortgagor and his grantee, by any subsequent arrangements between themselves, affect the mortgagee's lien, or prevent its operating to the full extent conferred by the mortgage."

No one would contend that a party could give a mortgage on his property to secure a debt and thereafter put improvements on the property, and when the mortgage is foreclosed, be entitled to pay for the improvements. If the purchaser from the mortgagor puts improvements on the place, he has no more right than his grantor except as stated in the case of *Austin* v. *Federal Land Bank of St. Louis, supra.*

It is not important in this case to say whether one holding under a quit claim deed, as the appellant did, would. be entitled to remove his improvements. But the chancery court gave him that right, gave him six months in which to move them, and there is no appeal by the appellee from this decision of the court. Having put the improvements on the property in good faith, the lower court concluded that it would be equitable to permit him to remove them. No other question is in-

volved in the case, except the rights of appellant under § 4658, Pope's Digest.

We find no error, and the decree is affirmed.