HILL v. DAY.

5-1981                                    331 S. W. 2d 38

Opinion delivered January 18, 1960.

*Frierson, Walker & Snellgrove, Barrett, Wheatley, Smith & Deacon,* for appellant.

*Rhine & Rhine, James M. Gardner,* for appellee.

SAM ROBINSON, Associate Justice. Appellee, Earl Day, filed this action asking that an instrument which appears on its face to be a deed be declared an equitable mortgage, and that under his alleged contract of pur-

chase with the mortgagor he be allowed to redeem from the mortgagee. The issues are whether the deed is in fact an equitable mortgage and if so whether Day has the right to redeem. Mary Brown owned 432 acres in Clay County; her son, Neal, owned 80 acres. They borrowed money from a gin company and as security gave a deed to all the property, retaining an option to repurchase. They were unable to pay their indebtedness to the gin company, and to secure money for this purpose they executed a deed to appellant, A. A. Hill, the husband of Naomi Brown Hill. Mary Brown was the mother of Neal Brown, Ruth Brownell and Naomi Brown Hill, all of whom, along with their mother, signed the conveyance to A. A. Hill. An option was retained giving Neal the right to repurchase the property within five years for $20,000 and interest.

The option provided that it is not assignable. Later Mary Brown died intestate, and it appears that Neal Brown and his sisters, Ruth Brownell and Naomi Hill, are her heirs. Neal and Ruth entered into a contract to sell the entire property to appellee, Earl Day, for the price of $40,000. Of course, in order to convey to Day they had to redeem from Hill, but instead of redeeming the land from Hill, for a consideration paid by Hill based on a valuation of $40,000, they cancelled the option to repurchase from him. At the time of this transaction, Hill had knowledge of Day's contract with Neal Brown and Ruth Brownell to purchase the property for a consideration of $40,000. Therefore, Hill is not an innocent purchaser. *Valley Planing Mill Co.* v. *Lena Lbr. Co.,* 168 Ark. 1133, 272 S. W. 860; *Collins* v. *Heitman,* 225 Ark. 666, 284 S. W. 2d 628.

The general doctrine prevails in this state that the grantor may show that a deed absolute on its face was intended only to be security for the payment of a debt and thus a mortgage. *Clark-McWilliams Coal Co.* v. *Ward,* 185 Ark. 237, 47 S. W. 2d 18; *Ehrlich* v. *Castleberry,* 227 Ark. 426, 299 S. W. 2d 38.

The Chancellor closely analyzed the facts and cited applicable law to the effect that the conveyance

by Mrs. Brown and Neal, Ruth and Naomi to Hill is an equitable mortgage. The chancellor said:

"The court is convinced that the evidence here is of that clear, cogent and convincing character to compel the conclusion that the deed and allied instruments were actually intended as a mortgage. It must be borne in mind that the court is not bound by the terms of the instruments alone, but may consider all of the circumstances in connection with the transaction and, any evidence, written or oral, otherwise competent, may be considered.

"In the first place, the parties here were closely related. The property originally belonged to Mary Brown, the mother of Naomi Brown Hill, Neal Brown and Ruth Brown Brownell. The principal defendant, A. A. Hill, is the son-in-law of Mary Brown and the husband of Naomi Brown Hill.

"The land originally, as indicated, belonged to Mary Brown but in her later years it was farmed by her son, Neal Brown. He became indebted, by reason of his farming operations and entered into an arrangement identical with the one later entered into with the defendant, A. A. Hill, by the terms of which the property was deeded to a Clay County concern that had made advances. This indebtedness was paid off by A. A. Hill and the property was deeded back to Neal Brown. Additional advances were made by Hill and a mortgage was executed on the property to secure that indebtedness. Then, most of the property was reconveyed by Neal Brown to his mother. When later on no progress was made toward payment of the debt due Hill, an arrangement was made between all the parties by which a deed, regular on its face, was executed by Mary Brown and Neal Brown conveying all of the property to Hill. Some doubt was expressed by the interested parties because of the advanced age of Mrs. Brown as to her capacity at the time to execute the deed and so in order to estop any of the heirs from questioning her capacity to execute the deed they were required to join in for that purpose and that purpose only.

"On the same day that the deed was executed, a purported option to purchase was executed and signed by A. A. Hill and his wife and by Ruth Brown Brownell and Neal Brown by the terms of which Neal Brown was given the right to repurchase the property and for the agreed price of $20,000.00. It is interesting here to note that the agreed price of $20,000.00 was less than $500.00 more than the amounts that Hill had actually advanced to Neal Brown, plus accrued interest at the time he took a mortgage on the property and subsequently advanced. Of course, in addition to the $19,553.44 that had actually been advanced Hill had put in a considerable amount of time assisting his brother-in-law in his financial difficulty. It is not unreasonable, therefore, to conclude that it was the intention of the parties at the time that the $20,000.00 should be considered as the amount of the debt and that it continued during the life of the five-year option.

"More persuasive, the court believes, was the fact that by the terms of the written option Hill agreed that he would keep an accurate account of his operations of the farm and after paying the farm manager, taxes, insurance, etc. and charging interest he would credit the net received from the farm operations against the agreed price of $20,000.00 in the event that Neal Brown should exercise his so-called option. This is diametrically opposed to the contention that the parties intended to make a contract for the purchase and sale of the land with an option to the grantor to repurchase. But on the contrary, it is entirely consistent with the fact that the instruments were intended as a mortgage and that Neal Brown would be considered as the owner of, and entitled to the rents from the farm operations for the five year period covered by the so-called option.

"As a matter of fact, after it was brought to the attention of Hill that Neal Brown desired to exercise his option and that he had listed the property with a real estate broker and the broker had obtained a purchaser, ready, willing and able to pay $40,000.00 for the property, Hill then agreed to pay $40,000.00 for the

property himself. However, it is significant to note that he did not deduct the $20,000.00 from the $40,-000.00 and pay the difference, but he meticulously itemized the income and expenses from the operation of the farm and took these figures into consideration in arriving at his settlement with the parties.

"As indicated above, this is inconsistent with the contention of ownership on the part of Hill, but entirely consistent with the contention of the plaintiff that the instruments, taken together, constituted a mortgage and continuing debt."

We agree that the conveyance to Hill is an equitable mortgage, but the decree orders that Naomi Brown Hill execute a deed to Day. We fail to see how Mrs. Hill has parted with her interest in the property. By virtue of his contract with Ruth and Neal, Day stands in their shoes and has the right to redeem from Hill. *Driver* v. *J. T. Fargason Co.,* 174 Ark. 114, 295 S. W. 35. The mortgagor has the right to convey his equity of redemption. *Kitchens* v. *Jones,* 87 Ark. 502, 113 S. W. 29; *Vernon* v. *Lincoln National Life Ins. Co.,* 200 Ark. 47, 138 S. W. 2d 61. But if Day redeems from Hill, he takes subject to the interest of Naomi Brown Hill, who owns an interest in the property; she has made no contract with Day to dispose of her interest, and there is no evidence that Neal and Ruth were authorized to act for her. In the event of redemption by Day, Mrs. Hill would still own her interest subject to her proportionate share of the cost of redemption.

Hill, the appellant, contends that under the terms of the deed and option to repurchase, the grantors, whom we are holding to be mortgagors, do not have the right to assign the right to redeem. True, the option has such a provision, but when construed as part of an equitable mortgage it is against public policy and not enforceable. In 36 Am. Jur. 784, it is said: "A mortgagor cannot, by any agreement made contemporaneously with or as a part of the mortgage transaction, however explicit or forceful, bind himself not to assert his right or equity of redemption. This doctrine is ap-

plicable to an equitable mortgage." It also applies *"to a stipulation as to the person* or persons by whom the right of redemption may be exercised." (Emphasis supplied) See also Restatement "Property", § 415, illustration (1).

In *Clark* v. *Reyburn*, 8 Wall. 318, 19 L. Ed. 354, the United States Supreme Court said: "It (the equity of redemption) is descendible, devisable, and alienable like other interests in real property. As between the parties to the mortgage the law protects it with jealous vigilance. It not only applies the maxim 'once a mortgage always a mortgage', but any limitation of the right to redeem, as to time or persons, by a stipulation entered into when the mortgage is executed, or afterwards, is held to be oppressive, contrary to public policy, and void."

Our conclusion is that the chancellor was correct in holding that the conveyance to Hill is an equitable mortgage, and that under his contract with Neal Brown and Ruth Brownell, Day has the right to redeem from Hill. But Mrs. Hill still owns her interest subject to payment of her *pro rata* cost of redemption. Therefore the decree must be reversed with directions to render a decree not inconsistent herewith. It is so ordered.