EL DORADO *v.* CITIZENS' LIGHT & POWER COMPANY.

Opinion delivered May 7, 1923.

1.  MUNICIPAL CORPORATIONS—PASSAGE OF ORDINANCE.—Crawford & Moses' Dig., § 7502, requiring that "ordinances of a general or permanent nature" be read on three different days unless two-thirds of the members composing the council shall dispense with the rule, has no application to an ordinance entering into a contract, such as an electric light and water franchise, as the fact that a franchise created by ordinance runs for a long period of time does not make the ordinance creating it general or permanent.

2.  MUNICIPAL CORPORATIONS—PERMANENT ORDINANCES DEFINED.— Municipal ordinances which endure until repealed are deemed to be permanent.

3.  MUNICIPAL CORPORATIONS—GENERAL ORDINANCES.—Ordinances of a general nature are those which are general and uniform in their application.

4.  PLEADING—EXHIBITS.—In suits in equity exhibits to the pleadings are considered as parts thereof, and such exhibits as constitute the foundation of the action, defense or counterclaim will control the allegations of the pleadings.

5.  INJUNCTION—FRAUD IN PROCURING FRANCHISE.—A complaint seeking to restrain the assertion of rights under a municipal franchise which alleges that the franchise was procured by fraudulent representation as to the effect of the ordinance granting the franchise *held* insufficient where the effect of the ordinance accorded with the alleged representations.

6.  MUNICIPAL CORPORATIONS—OMISSION OF WORD FROM PUBLISHED ORDINANCE.—The fact that a word appearing in a municipal ordinance as passed was omitted from the ordinance as published is immaterial where the effect of the ordinance is not materially changed.

7. MUNICIPAL CORPORATIONS—FRANCHISES—ACCEPTANCE.—A municipal franchise is not binding until accepted and acted upon in accordance with the terms of the franchise.

8. MUNICIPAL CORPORATIONS—FRANCHISES—REVOCATION.—When a municipal ordinance is accepted and acted upon by performance of the terms specified therein, it becomes a binding contract which is not revocable at the will of the grantor.

9. MUNICIPAL CORPORATIONS—FRANCHISE—FORFEITURE.—A municipal franchise to furnish electric light and water to a city, granted on condition that the grantees shall within three months "begin active operations and work in the laying of water mains and the erection of electric light lines and poles and the construction of sufficient power plant and the procurement of a sufficient water supply," etc., is to be treated as a unit, and it is sufficient to prevent a forfeiture if a substantial amount of work is done under the franchise within three months.

Appeal from Union Chancery Court, *J. Y. Stevens,* Chancellor; affirmed.

*U. L. Meade* and *Mahoney, Yocum & Saye,* for appellant.

No completed franchise was ever consummated. The ordinance was never legally passed. Not read on three different days. Sec. 7502, Crawford & Moses' Digest; 40 Ark. 107; 100 Ark. 503; 145 Ark. 547. 153 Ark. 1, not applicable; 19 R. C. L. 888, § 188; Dillon's Municipal Corporations §§ 530-573; McQuillin's Municipal Corporations, § 607. Franchise was not accepted. 12 R. C. L. 192, sec. 19; 26 C. J. 1030, § 66; Pond on Public Utilities, § 375; 70 Ark. 303; 80 Ark. 108; 114 Ark. 503; 138 Ark. 390. Construction not begun within 3 months as required in sec. 5. Page on Contracts, sec. 51; 15 N. E. (Ind.) 527; 94 (Ind.) 714; 92 N. E. (Ind.) 901; Abbott, Municipal Corporations, § 901; 26 Sup. Ct. 1439; 5 Ark. 595; 26 C. J. "Franchises" §§ 58, 66; 178 Iowa 200; 163 Cal. 668; 23 Wendell (N. Y.) 537; 262 Fed. 291; 271 Fed. 671; 53 S. E. (N. C.) 292; 64 S. E. (N. E.) 171; 3 Am. & Eng. Ann. Cas. 89. Resolution not accepted was only a proposition without binding force. 38 N. E. (Ill.) 534; 168 Ill. 286; 42 Fla. 462; 18 Sup. Ct. 875; 30

Pac. 827; 75 N. W. (Mich.) 130; 101 N. Y. Supp. 61; 94 N. E. (N. Y.) 1060; 168 Pa. 182. Franchise when accepted and acted upon construed as other contracts. 92 S. W. 948; 64 S. E. 171; 113 Fed. 256; 86 Va. 608; 84 S. W. 378; 72 S. W. (Tex.) 55; 75 N. W. (Mich.) 130; 125 So. 366; 153 U. S. 564; 55 Pa. Sup. 564; 55 Ark. 360, 105 Ark. 626; 95 Ark. 532; 134 U. S. 67; 137 Ark. 195; 5 Ark. 595. Franchise forfeited for failure to perform conditions subsequent. Such contracts construed most strictly against donee. 96 U. S. 63; 200 U. S. 22; 111 U. S. 412; 141 U. S. 67; 166 U. S. 685; 56 N. J. Equity 463; 168 Pa. 181; 35 Pa. Sup. Ct. 533; 84 S. W. 378; 209 Pa. 300; 101 N. Y. Supp. 61. City council acts in legislative capacity in exercising the powers conferred upon it to grant franchises for the public benefit. 101 Ark. 227; 98 Ark. 543; 64 Ark. 152. Franchises are lost by misuser or nonuser or failure to comply with conditions subsequent contained therein. 235 U. S. 179; 113 U. S. 574; 185 U. S. 336; 218 U. S. 645; 30 Pac. 826. If franchise is valid, it only covers part of city east of Rock Island main line. 26 Sup. Ct. 445; 33 Sup. Ct. 697; 26 Sup. Ct. 24; 97 U. S. 412; 147 Fed. 1; 56 N. E. (N. Y.) 528. Contract construed most strongly against party who prepared it. 151 Ark. 81; 112 Ark. 1; 115 Ark. 166; 90 Ark. 276; 35 Ark. 156; 113 Ark. 174; 150 Ark. 492; 26 C. J. 1031, sec. 70. Title or ordinance part thereof. Am. & Eng. Ann. Cas. 1917-E, 534.

*Patterson & Rector,* for appellee.

Amended and substituted complaint does not state a cause of action, and demurrer was properly sustained. In suits in chancery the exhibits to the pleadings constitute parts thereof, and such as constitute the foundation of the action will control the allegations of the pleadings. The two ordinances in question and the notice served by the city on appellee are made part of complaint. 68 Ark. 263; 104 Ark. 459; 99 Ark. 218; 135 Ark. 38. When a franchise is granted and accepted, it constitutes a binding contract. 70 Ark. 300; 80 Ark.

125; 138 Ark. 393. Ordinance granting franchise not required read a sprovided in § 7502, C. & M. Digest. 153 Ark. 1; 100 Ark. 496. Ordinance granting franchise legislative act. 101 Ark. 227. Not impeached by parol evidence. 76 Ark. 205; 66 Ark. 472; 88 Ark. 265. The evidence accepted became a contract and cannot be varied or contradicted by parol testimony. **113 Ark. 517.** Demurrer admits no alleged fact not legally susceptible of proof. 72 Ark. 119. Ordinance, with or without word "now" claimed to have been omitted in publication, has the same meaning. Allegations of the complaint show that the ordinance granting the franchise was accepted. 153 Ark. 1. There is no ambiguity about the ordinance. Its meaning is clearly apparent from its terms.

*U. L. Meade* and *Mahoney, Yocum & Saye,* in reply.

When the facts stated, together with every reasonable inference therefrom, constitute a cause of action, the demurrer should be overruled. 91 Ark. 404; 70 Ark. 161; 77 Ark. 351. The beginning of the doing of any one of the four things required by the ordinance was not a compliance with its terms. 55 Ark. 362.

McCULLOCH, C. J. The council of the city of El Dorado passed an ordinance on August 17, 1922, granting a franchise to J. A. Rowland and eight other citizens of the municipality to construct and operate a system for furnishing light and water in the city, and the franchise was subsequently assigned by the original holders to the Citizens' Light & Power Company, a domestic corporation. Prior to that time a franchise, for similar purposes, not exclusive, had been granted to the Arkansas Light & Power Company, and that company is operating in the city.

On August 25, 1922, the city council passed another ordinance, revoking the ordinance of August 17, 1922, granting the franchise held by appellee, Citizens' Light & Power Company, and on December 2, 1922, the present action was instituted in the chancery court by the

city against appellee to restrain appellee from asserting rights and proceeding to operate under the franchise which the council had undertaken to revoke.

The court sustained a demurrer to the original complaint, and appellant filed an amended complaint, to which the court also sustained a demurrer. Appellant stood upon its amended complaint, and declined to further amend, so the complaint was dismissed, and an appeal has been prosecuted to this court.

The validity of the franchise is attacked on three grounds: first, that the ordinance was not properly passed, in that it was read three times at the same meeting, and placed on its final passage without a suspension of the rules; second, that the passage of the ordinance was procured by false and fraudulent misrepresentations on the part of the promoters concerning its contents; and third, that there was a material change in the phraseology of the ordinance after its enactment and before publication.

Answering the first ground of attack on the validity of the ordinance, it is sufficient to call attention to the fact that this question has already been expressly decided by this court against the contention of appellant. We held in *Barnett* v. *Mays,* 153 Ark. 1, that the statute (Crawford & Moses' Digest, § 7502) requiring that "all by-laws and ordinances of a general or permanent nature shall be fully and distinctly read on three different days unless two-thirds of the members composing the council shall dispense with the rule, does not apply to an ordinance or resolution entering into a special contract." In that case we were dealing with an ordinance identical in character with the one now under consideration, and which granted a franchise authorizing the operation of an electric light plant. Counsel for appellant seek to make a distinction between the two cases because the court in the Barnett case used the words "special contract," and that the contract under consideration in that case was more restricted than the one in

the present case. The use of the word "special" may have been inapt, but the effect of the decision was that the statute quoted above has no application to an ordinance or resolution entering into a contract, and it is unimportant whether the contract is one more or less restricted in its character. The test as to the requirement of the statute is whether or not the ordinance is one of a "general or permanent nature," and unless it falls within that class the statute requiring a reading on different days or a suspension of the rule has no application. The fact that the franchise created by the ordinance runs for a long period of time does not make it general or permanent. Of course, all ordinances enacted by city councils are not permanent in the sense that they cannot be repealed, but those which endure until repealed are deemed to be permanent, and all others are not permanent. Ordinances of a general nature are those which are general and uniform in their application. It is clear, we think, that this point of attack on the validity of the ordinance is unfounded.

The other two grounds of attack on the validity of the ordinance may be discussed and disposed of together.

Section 1 of the ordinance in controversy reads as follows:

"There is hereby granted to J. A. Rowland, T. H. Norris, E. L. Pye, J. H. Alphin, George S. Miles, Hopkins Wade, H. M. Johnson, Neill C. Marsh and B. W. Griffin, their heirs and assigns, the right and authority to build, equip, maintain and operate a light and water plant in the city of El Dorado, Arkansas, and to furnish electric light, power and current, and water for domestic and other purposes, to the inhabitants of all that part of the city of El Dorado, Arkansas, lying east of the Chicago, Rock Island and Pacific Railway Company's main line tracks, as now located, with the right to erect poles, string electric lines and lay water mains in any of the streets, avenues and alleys thereof, and to furnish

and supply the inhabitants of any other part of the city of El Dorado, Arkansas, with electric lights, power or current, and with water, who are not being supplied and furnished with such light and water by the Arkansas Light & Power Company; and the right to use the streets, avenues and alleys of said city for said purposes is hereby granted.''

It is alleged in one of the paragraphs of the complaint that the passing of the ordinance was induced by false and fraudulent misrepresentations made by one of the promoters to the city council, to the effect that the "franchise was being sought for the sole purpose of giving service to that part of the city of El Dorado east of the Chicago, Rock Island and Pacific Railway Company's main line tracks, and only such other portions of the city of El Dorado not then being served by the Arkansas Light & Power Company,'' and that the ordinance was read to the council by the attorney for the promoters as containing language which showed only that intention.

There is another allegation in the complaint that the ordinance as read and passed contained the word "now,'' so as to make that portion of it read that the franchise was to cover the right of operating in "any other portions of the city of El Dorado not now being served by the Arkansas Light & Power Company,'' whereas the word "now" was omitted from the publication of the ordinance.

The ordinance as published, as well as the minutes of the city council, are exhibited with the complaint, and we are permitted to look to them in testing the sufficiency of the allegations of the complaint. In other words, the exhibits control the allegations of the complaint. There are many decisions of this court bearing on this subject in regard to the effect of exhibits filed with pleadings, and the rule recognized by them all is that, under the statute requiring the filing of instruments upon which the cause of action, defense or counterclaim is

founded (Crawford & Moses' Digest, § 1222), in actions of law, an exhibit is not considered a part of the pleadings unless it is the foundation of the action (*Eupers v. State*, 85 Ark. 223), but that in suits in equity all exhibits to the pleadings are considered as parts thereof, and such exhibits as constitute the foundation of the action, defense or counterclaim will control the allegations of the pleadings. *Beavers v. Baucum*, 33 Ark. 722; *American Freehold Land Mortgage Co.* v. *McManus*, 68 Ark. 263; *Koons* v. *Markle*, 94 Ark. 572; *Cox* v. *Smith*, 99 Ark. 218. The effect therefore of the allegations of the complaint, when considered with the ordinance exhibited therewith, is that the alleged fraud consisted in a representation that the proposed ordinance only authorized the operation of a light and water plant in that part of the city of El Dorado lying east of the railroad track, and also on the west side of the track for the purpose of supplying inhabitants not being supplied with water and light by the Arkansas Light & Power Company.

We think that the allegations show that there were no material misrepresentations, for the effect of the ordinance is in accordance with the alleged representations of the promoters, and we are also of the opinion that the omission of the word "now" did not make any material change in the effect of the ordinance. According to the language of the ordinance, as it now appears exhibited, and when read with the word "now" included, it indicates the purpose to authorize the construction of water pipe lines and electric wire lines into the territory west of the railroad for the purpose of supplying inhabitants not supplied by the other company. The controlling purpose was to furnish additional facilities for those not then being supplied in the territory west of the railroad. but the languge is not sufficient to limit the enjoyment of the additional facilities to those who were not being supplied at the time of the passage of the ordinance. The facilities, once in operation and available to all inhabitants, became of a public nature, and were open to all

who are so situated as to be able to take advantage of them. The franchise is of a public nature and is for the benefit of the public at large, and the service furnished thereunder cannot be denied to any inhabitant occupying a situation to receive the service and willing to pay for the same.

The language of sections 4 and 5 clearly indicates that authority was conferred to cover the territory west of the railroad which was occupied by the Arkansas Light & Power Company. Section 4 specifies how the poles for electric lines shall be set, and provides that they shall be so placed "as not to interfere with any existing telephone or other wires." Section 5 provides generally for the construction, installation and operation of the light and water plants, and provides that lines may be run "for the purpose of reaching and supplying customers of water or electric current in other parts of said city who are not supplied by the Arkansas Light & Power Company," and that the grantee of this franchise "shall have the right to use, in proper manner, and as herein provided, any street, avenue or alley for the purpose of making such extensions of electric lines or water mains, but the same shall be so constructed or laid as not to interfere with any present lines or mains, and that the same may parallel or cross on said streets or avenues." This language, as before stated, clearly shows an intention to permit the grantees of this franchise to cover the same territory and parallel the lines theretofore established by the Arkansas Light & Power Company.

Now, it is not conceivable that the framers of this ordinance and the members of the council in adopting it meant to permit the franchise to be operated merely for the benefit of those who, at the time of the passage of the ordinance, were not being served by the other company. Of course, the question of improper interference with the business of rival companies is not involved in the present litigation, for the other company is not a party

to this suit. All that we can decide now is whether or not appellee is exceeding the authority of its franchise in constructing its lines preparatory to operating them in the territory west of the railroad, and whether or not the passage of the ordinance was unlawfully procured or its language changed.

Our conclusion is that the allegations of the complaint are not sufficient to show any fraudulent misrepresentations or any material change in the language of the ordinance, for the effect of the ordinance is the same, with or without the alleged change, and the effect of the language used is in accordance with the alleged representations of the promoters.

It is next contended that the franchise was not in force at the time the revoking ordinance was passed, for the reason that the terms had not been accepted, either formally or by commencing operations thereunder, within the time specified.

Section 5 of the ordinance granting the franchise provides that the grantees, their successors and assigns, "shall, within three months after the passage and approval of this ordinance, begin active operations and work in the laying of water mains and the erection of electric light lines and poles and the construction of sufficient power plant and the procurement of a sufficient water supply therefor, and shall prosecute the same with diligence to a completion so as to furnish adequate electric current and water supply to the more populous section of that part of the city of El Dorado lying east of the main line of the Chicago, Rock Island and Pacific Railway Company, and shall at all times be required to extend their water mains and electric lines along any street, avenue or alley thereof where such extension will accommodate one customer for either water or lights, or both, as the case may be, to each 100 feet of such extension, and for the purpose of reaching and supplying consumers of water and electric current in other parts

of said city who are not supplied by the Arkansas Light & Power Company."

Section 7 of the ordinance reads as follows:

"If the powers herein granted are not exercised within six months from the date hereof, this franchise shall thereupon become *ipso facto* null and void, but, if exercised and while the grantees herein, their successors and assigns, are engaged in performing the services contemplated herein, the same shall be in full force and effect for twenty-five (25) years from date hereof."

It is contended that, according to the allegations of the complaint, which must on demurrer be taken as true, there was no acceptance of the ordinance by commencing operations thereunder within three months. Counsel present many authorities to the effect that an ordinance granting a franchise is a mere offer, and does not become a contract until it is accepted and operations begun under it. It is unnecessary to go further than to consider our own decisions on this subject, where we have held that such a franchise is not binding until "accepted and acted upon in accordance with the terms of the franchise." *Hot Springs Electric Light Co.* v. *Hot Springs,* 70 Ark. 300; *Lackey* v. *Fayetteville Water Co.,* 80 Ark 108. Those cases held, however, that when such an ordinance is accepted and acted upon by the performance of the terms specified therein, it becomes a binding contract which is not revocable at the will of the grantor. Treating the law on this subject as settled in accordance with the contention of appellant, it remains only to consider whether the allegations of the complaint are sufficient to show a failure to begin operations within the time specified.

Now, it is the contention of counsel that the language of the ordinance should be interpreted as requiring that operations should have been begun in the construction of each feature of the utility within the time specified; that is, that, in order to fasten the franchise as a contract, the grantee must have commenced laying water

mains, the erection of light poles and lines, the construction of a power plant, and the procurement of a water supply. We do not so interpret the contract. The franchise is treated as a unit, and the requirement of the ordinance is, as already seen from the quotation, that the grantee shall begin operations and work under the franchise towards the construction of the facilities for furnishing service under the franchise. We think that the only requirement was that the work should be substantially commenced—not each feature of the work, but a commencement of the construction of the facilities as a single unit. What the framers of the ordinance meant was that there should be an acceptance by the commencement of operations within the time specified. The other section, which requires that the franchise be operated so as to furnish facilities within six months, means that there must be a completion of all the features of the service—that is, both water and light—so as to constitute an operating plant. Now, a consideration of the language of the complaint discloses a general allegation that work had not been commenced within three months from the date of the approval of the ordinance, but there are other statements in the complaint which are contradictory and show that work had in fact been commenced, in the erection of poles and the stringing of wires, before the expiration of the time. In testing the sufficiency of the allegations of the complaint it is proper for the court to take into consideration the contradictory allegations, and, when the different statements are read together, we think there is not sufficient to show that work had not been commenced, pursuant to the franchise, within the meaning which should be given to the language used. Of course, the complaint constitutes, perhaps, a sufficient allegation that the work was not commenced upon all the features of the enterprise, that is to say, in the construction of the plant, laying the water mains, and the erection of the poles and wires, but, under the interpretation we have given to this provision of the work, we think

the allegation is not sufficient to show that there was no substantial amount of work done within the ninety days specified. The court was therefore correct in sustaining the demurrer to this feature of the complaint.

The final contention of counsel for appellant is that the franchise was not intended to cover the territory east of the railroad, but we have already disposed of that contention in discussing the attacks upon the validity of the ordinance.

Upon the whole, we are of the opinion that the complaint fails to state a cause of action in any respect, and that the court properly sustained the demurrer.

Affirmed.