McCLELLAN, MAYOR, v. STUCKEY.

4-5182                                    120 S. W. 2d 155.

Opinion delivered October 10, 1938.

*John S. Mosby,* for appellants.

*J. G. Waskom,* for appellees.

McHANEY, J. Appellants are the mayor, aldermen and other officials of the town of Lepanto, Arkansas, and appellees are citizens and taxpayers in said town. Prior to October 14, 1935, a petition was circulated in said town and signed by more than ten qualified electors therein, praying that the town council order the taking of a census of said town for the purpose of raising it to a city of the second class, and was filed with the town recorder, who presented it to the town council at its next regular meeting held on said date. At said meeting a resolution was adopted and approved, authorizing and directing the mayor to appoint enumerators to take the census. The enumerators were appointed by the mayor and approved by the council and they subscribed to the oath of office. Thereafter, on October 18, 1935, the enumerators reported the census returns to the mayor's office which showed a

population of 1,772 inhabitants, where it presumably remained until November 26, 1935. On this latter date, a special meeting of the town council was called to act upon the petition, examine the census and to take such further steps as were necessary to raise said town to a city of the second class. The council examined the census, found it to be correct, approved the returns as filed and passed a resolution showing that the town had a population of 1,772 persons and resolved that all proceedings required by law to be done in the premises had been done, and that an application be made to the State Board of Municipal Corporations to have the town declared to be a city of the second class, which authorized the mayor and recorder to sign the application. The resolution was unanimuosly adopted. Application was thereupon made to the State Board of Municipal Corporations and on December 7, 1935, said board issued a proclamation, advancing said town to a city of the second class.

Ninety days thereafter, on March 7, 1936, appellees filed this action against appellants alleging, (1) that no notice was given by appellants that they intended to take any action or proceedings with the object of raising said town to a city of the second class and that appellees had no knowledge of the proceedings by which it was advanced; (2) that the census relied upon by appellants is fraudulent as Lepanto had a population of only about 1,200 inhabitants; (3) that the State Board of Municipal Corporations had no jurisdiction or power to raise said town to a city of the second class because it had no satisfactory evidence before it at the time it acted that it had a population justifying an advancement; (4) that the census did not remain on file in the office of the mayor for thirty days as required by law and that, therefore, the State Board of Municipal Corporations had no jurisdiction; (5) that if the census did remain on file, it was not on file in the manner required by law, and that the census was not taken in the manner prescribed by law. Appellants filed a demurrer to the complaint and answered, denying all the material allegations thereof and pleading the thirty-day provision of the statute as a statute of limitations in which objections could be made to the

census. They prayed that the complaint of the plaintiffs be dismissed. Trial resulted in a decree for appellees in which the court found that there was no publication of the resolution as required by law and that the preponderance of the evidence showed that at no time prior or subsequent to the taking of the census did the town of Lepanto have 1,750 inhabitants, and entered an order enjoining appellants from proceeding further as a city of the second class and declaring all actions taken by the council in excess of its authority as an incorporated town council, including an ordinance levying a privilege tax passed since the order of advancement, be declared null and void, canceled, set aside and vacated; that the officials of the town, appellants, be enjoined from exercising any of the powers of a city of the second class and from acting in excess of their authority as officers of an incorporated town. This appeal followed.

Appellants' first contention for a reversal of the judgment against them is that the court had no jurisdiction, but that if it did have jurisdiction, the suit constitutes a collateral attack against the proceedings of the council and the State Board of Municipal Corporations. The case of *Bush* v. *Echols,* 178 Ark. 507, 10 S. W. 2d 906, is contrary to appellants' contentions. We there held that § 13 of art. 16 of the Constitution is authority for the bringing of a suit by any citizen of any city or town to protect the inhabitants thereof against the enforcement of any illegal exactions whatever. We there said: "Appellees are attempting by this action to protect the inhabitants of Cotton Plant from illegal exactions in taxation." Citing *Waldrop* v. *K. C. S. Ry. Co.,* 131 Ark. 453, 199 S. W. 369, L. R. A. 1918B, 1081, as authority for the action. In this action, the town council, shortly after obtaining the order from the state board, proceeded to enact an occupation tax ordinance levying a tax upon all businesses and occupations carried on in said town. Such an ordinance cannot be enacted by an incorporated town, but only by a city of the first or second class. Therefore, if the order, raising the town to a city of the second class is void, it is open to the attack made, even though col-

lateral, as a void proceeding may be attacked collaterally, including judgments of courts of record.

Apparently the proceedings to raise the town to a city of the second class were kept quite secret. No notice was published regarding the matter until after the issuance of the proclamation by the state board raising the town to a city of the second class, at which time it was published in the Commercial Appeal at Memphis, Tennessee, and in the Arkansas Gazette at Little Rock. This was the first notice appellees had of the procedure. Two resolutions of the city council were passed, one on October 14, acting upon the petition of ten or more residents, in which enumerators were appointed to take a census, and the other was passed on November 26, 1935, as the result of which the town was advanced to a city of the second class. Section 9559 of Pope's Digest provides that all by-laws, or ordinances, of a general or permanent nature and those imposing any fine, penalty or forfeiture shall be published in some newspaper of general circulation in the corporation. Provided in incorporated towns where no newspaper is published, written or printed notices posted up in five of the most public places in said corporation shall be deemed a sufficient publication of any law or ordinance for incorporated towns. The trial court held that the resolutions above mentioned, of October 14 and November 26, were within the purview of that section of the Digest and should have been published. We think the court was correct in so holding. It is immaterial that these enactments of the city council were designated as resolutions. The effect was to provide for a new and different form of government for the municipality which did affect all of the people thereof, and there could have been no good reason why they should not be published, unless to keep the people in ignorance of what the mayor and council were undertaking to do. Appellees, eight in number, say they had no notice of the proposed movement, knew nothing about it until after the State Board had acted. It is undisputed that no notice was published in the Lepanto Press, a newspaper printed and published in said town, or elsewhere in said county. We said in *Bush* v. *Echols, supra,*

that: "According to the complaint, the whole procedure of the town officials was cloaked with secrecy, no publicity given, no notice, either actual or constructive, and honeycombed with fraud. The proceedings had and done were therefore void." Here, a somewhat similar situation exists as shown by the preponderance of the evidence.

We are also of the opinion that the census relied upon by appellants is shown to be fraudulent since the preponderance of the evidence shows that it had less than 1,750 inhabitants and probably not more than 1,200. The purported census returns made by the enumerators was conveniently lost so that none of appellees had an opportunity to check it. The enumerators themselves failed to testify, although living in the town and were available to appellants. The proof shows by the treasurer of the town that $36.25 was paid the enumerators for taking the census and the compensation fixed for such purpose by statute is 2½ cents per name which would show only 1,450 names enumerated to cover a cost of $36.25. But it is said that the town marshal enumerated some 320 persons other than those listed by the lady enumerators, for which he was not paid. But the town marshal was not called to testify as to the correctness of his returns. Appellees had a census made by one Insor, who testified that he made a house-to-house canvas and made an accurate record of every man, woman and child in Lepanto, which contained 1,146 names. Appellee Stuckey testified that he counted all of the houses in Lepanto and that there were only 296; that they would average about four persons to the house, which would make 1,184 inhabitants. Even if it averaged five to the house, there would not be 1,750 persons. A former mayor of the town testified that he had a census taken in 1932-1933, which showed something over 1,100 inhabitants. When we consider all of this evidence, together with the failure of appellants to produce the census taken by them or to put on the stand the enumerators who took the census, we are constrained to agree with the trial court that Lepanto did not have at that time, or either before or after, 1,750 inhabitants, which number is jurisdictional to raise an incorporated town to a city of the second class.

Other questions are discussed by the parties, but we deem it unnecessary to consider them as the matters we have already discussed are decisive of the issues presented.

The decree of the court is correct and must be affirmed. It is so ordered.