The Honorable Barbara King State Representative 106 Tulip Circle Helena, AR 72342-1620
Dear Representative King:
I am writing in response to your request for an opinion on the following questions:
 1. Can the West Helena City Council pass a resolution to take the place of an ordinance that is already in place for the redistricting of the wards in a first class city?
 2. In a first class city, does the mayor have a tie-breaking vote that passes an ordinance, which includes an emergency clause, when all members of the council are present and cast four votes `for' and four votes `against' the ordinance?
RESPONSE
It is my opinion that the answer to your first question likely depends upon the effect of the particular redistricting action and the proceedings of the City Council in this regard. These are factual matters that cannot be resolved in the limited format of an opinion from this office. It is my opinion that the answer to your second question is "no."
Question 1 — Can the West Helena City Council pass a resolution to takethe place of an ordinance that is already in place for the redistrictingof the wards in a first class city?
Arkansas Code Annotated § 14-43-311 (Repl. 1998) provides for the redistricting of wards in cities of the first class with the aldermanic form of government. See generally Moorman v. Lynch, 310 Ark. 525,837 S.W.2d 886 (1992) and Op. Att'y Gen. 93-427. This Code section states in pertinent part:
 (a)(1)(A) City councils in cities of the first class shall have the authority to redistrict the wards in their city when they determine that the people can best be served by adding wards, combining wards, or changing ward boundary lines to equalize the population in the various wards.
 (B) It shall be the duty of the council to see that each ward has as nearly an equal population as would best serve the interest of the people of the city.
 (2)(A) Within ninety (90) days after redistricting, if one hundred (100) or more qualified electors in the city are dissatisfied with the redistricting of the city into wards, they shall have the authority to petition the circuit court.
 (B) The court, after due hearing, shall have authority to redistrict the city into such wards as the court shall deem best if the court finds that the redistricting action by the council was arbitrary and capricious.
Pursuant to these provisions, therefore, the City Council is responsible for the redistricting of wards whenever it determines that redistricting is necessary to equalize the population of the various wards. The Council can add wards, combine wards, or change boundary lines for this purpose.Id. A judicial means of challenging any such redistricting is provided; but the statute is silent as to the specific proceedings of the council, i.e., whether redistricting may be accomplished by ordinance, resolution, or some other action. Nor have I found any other state law defining or specifying the requisite procedure in this regard. Compare
A.C.A. §§ 14-55-102 and — 103 (regarding ordinance requirement in connection with city's exercise of the police power; see generally CoalDistrict Power Company v. Booneville, 169 Ark. 1065, 1068, 278 S.W. 353
(1925) and A.C.A. § 14-169-708 — 801 (providing for the adoption of urban renewal plans through resolutions; see Adams v. Sims, 238 Ark. 696,385 S.W.2d 13 (1964)).
Under these circumstances, it is relevant to note the general rule that "[w]here the law conferring authority on the city council to act does not require same to be exercised by ordinance, it may be exercised by resolution." Coal District Power Company v. Booneville, 169 Ark. 1065,1068, 278 S.W. 353 (1925), citing Batesville v. Ball, 100 Ark. 496,140 Ark. 712 (1911) and Arkadelphia Lumber Co. v. Arkadelphia, 56 Ark. 350,19 S.W. 1053 (1892). As a general matter, therefore, it is my opinion that a city council could exercise its redistricting authority under A.C.A. § 14-43-311 by resolution. Another important principle of law must, however, be recognized in addressing your particular question concerning the passage of a resolution "to take the place of an ordinance that is already in place for the redistricting of the wards. . . ." If the particular resolution in question is of a "general or permanent nature" (A.C.A. §§ 14-55-202 and — 206), and the requisite procedures for measures of this nature were not followed, then in my opinion such resolution would be subject to challenge.[1] This principle is illustrated by the case of McClellan v. Stuckey, 196 Ark. 816,120 S.W.2d 155 (1938), involving certain "resolutions" authorizing and approving a special census, which had the effect of changing Lepanto from a town to a city of the second class. The resolutions were not published, and the court held this fatal to the proceedings, stating:
 It is immaterial that these enactments of the city council were designated as resolutions. The effect was to provide for a new and different form of government for the municipality which did affect all of the people thereof, and there could have been no good reason why they should not be published. . . .
196 Ark. at 820.
The court in effect held that the resolutions were of a "general" nature, and as such should have been published pursuant to statute. The test for whether a measure is "general or permanent" has been expressed as follows:
 Of course, all ordinances enacted by city councils are not permanent in the sense that they cannot be repealed; but those which endure until repealed are deemed to be permanent, and all others are not permanent. Ordinances of a general nature are those which are general and uniform in their application.
City of El Dorado v. Citizens Light Power Co., 158 Ark. 550,250 S.W. 882 (1923). See also Adams v. Sims, supra (holding that an urban renewal plan was neither general nor permanent because it did not encompass the whole city and was effective only for a term of twenty years); City ofFort Smith v. O.K. Foods, Inc., 293 Ark. 379, 738 S.W.2d 96 (1987).
These cases compel me to conclude that the particular redistricting action must be considered when seeking to determine the validity of any "resolution" adopted for this purpose. I believe a court would likely look at the overall effect of the redistricting in order to determine whether it falls into the category of "general and uniform" in application. City of El Dorado, supra. These are obviously factual considerations that cannot be further developed in the context of this opinion. If, in fact, the particular resolution at issue is general and uniform, the requisite statutory proceedings for ordinances would have to be followed to secure its validity. See n. 1, supra.
Question 2 — In a first class city, does the mayor have a tie-breakingvote that passes an ordinance, which includes an emergency clause, whenall members of the council are present and cast four votes `for' and fourvotes `against' the ordinance?
It is my opinion that the answer to this question is "no," pursuant to Amendment 7 to the Arkansas Constitution, as interpreted in Thompson,Mayor v. Younts, 282 Ark. 524, 669 S.W.2d 471 (1984). Please note that I have enclosed a copy of Attorney General Opinion 96-155, which addresses this question with respect to an incorporated town. The Opinion applies as well to a city of the first class, which must pass its emergency measures by a vote of "two-thirds of all the members elected to [the] city . . . [council]." Ark. Const. amend. 7 (under "Emergency.") I will not restate the analysis, but instead refer you to Opinion 96-155 for a thorough discussion of the issue and conclusion.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh
Enclosure
[1] Measures of a "general or permanent nature" are considered ordinances and must be read on three different days pursuant to A.C.A. §14-55-202, unless the rule is dispensed with. Such ordinances must also be properly recorded and authenticated (A.C.A. § 14-55-205), and they must be published in accordance with A.C.A. § 14-55-206.