Luke MOORMAN, D.M. Cox, Diane Davis and Charlene
Hardcastle, *v.* Sharon D. Priest, Mayor and the City of
Little Rock and Vaughn McQuary, Bob Brooks, and Mary
Louis Williams as Members of the Pulaski County Election
Commission *v.* Jim LYNCH, Jean Gordon, Jim Finch, Dale
Charles, Dalton Jones, Sammy Mills, Johnnie Pugh, Kathy
Wells, Brenda Wyrick, and Tommy Hudson

92-944                                    837 S.W.2d 886

Supreme Court of Arkansas
Opinion delivered October 5, 1992

*John I. Purtle, P.A.*, for appellants.

*Johnson & Johnson*, by: *Karen K. Johnson*, for appellees.

*Thomas M. Carpenter*, City Att'y, by: *Thomas M. Carpenter*, for amicus curiae City of Little Rock.

ROBERT H. DUDLEY, Justice. The trial court declared that a proposed ballot issue to change the form of city government was invalid and directed the county election commission to remove the proposal from the ballot. We affirm that declaratory judgment.

Prior to 1957, the City of Little Rock was organized under the aldermanic form of government. The mayor was directly elected by majority vote, and two aldermen were elected from each of five wards. The city attorney, city clerk, and city treasurer were also elected. Since 1957, the City has been organized under the city manager form of government. *See* Ark. Code Ann. §§ 14-47-101 — 14-47-139 (1987). Under the city manager form of government, the City is governed by a board of seven directors elected at large. *See* Ark. Code Ann. §§ 14-47-109 & 110 (1987). The elected directors, in turn, select a mayor from among themselves. Ark. Code Ann. § 14-47-116 (1987).

An unincorporated association of citizens, appellees Charles, et al., formed a campaign committee entitled "Little Rock Fair Representation Campaign Committee" and successfully petitioned the City for a special election on the issue of reorganizing the current form of city government to elect six directors from wards and to elect a mayor at large. This group did not seek to change the form of government; it sought only to change the method of selecting the governing body. A special election was called on the issue for August 11, 1992. There was no further dispute over the "Fair Election" issue being on the ballot.

A second unincorporated association of citizens, appellants Cox, et al., formed a campaign committee entitled "Mayor-council Form of Government Committee" and submitted another petition to the City. Their petition asked that the City call a special election to determine whether the City should change its form of government and be reorganized under the aldermanic

form of government. *See* Ark. Code Ann. § 14-47-107 (1987). The City Clerk certified the petition as being sufficient in form and number of signatures, and the Mayor called for a special election on that issue, also to be voted upon on August 11, 1992. The proposed ballot form for that issue was to be as follows:

### ALDERMANIC FORM

ON THE QUESTION OF ORGANIZING THE CITY OF LITTLE ROCK UNDER THE ALDER-MANIC FORM OF GOVERNMENT (MAYOR AND COUNCIL); WHEREBY A MAYOR IS ELECTED AT-LARGE BY A MAJORITY OF THE VOTERS; *AND WHEREBY SIX (6) WARDS WILL BE ESTAB-LISHED WITHIN THE CITY WITH TWO (2) COUN-CIL POSITIONS PER WARD.* [Emphasis supplied.]

_____FOR             _____AGAINST

The first unincorporated association of citizens, the "Fair Representation" appellees, Charles, et al., filed a petition in circuit court for declaratory judgment and for a writ of mandamus compelling the Pulaski County Election Commission and the City of Little Rock to remove the second, or aldermanic, issue from the ballot. The petition named as defendants the Election Commissioners, the City Directors, and three of the members of the "Mayor-council Form of Government Committee," D.M. Cox, Diane Davis, and Luke Moorman, whom the appellees claimed "are the principal leaders of a group of citizens operating under an unincorporated association under the name 'Mayor-council Form of Government Committee.' " The City Directors and the Election Commission answered and also joined in asking for declaratory relief. The three defendant citizen members of the "Mayor-council" committee answered and asked the trial court to dismiss the action. They did not request any affirmative relief.

On July 17, 1992, the trial court ordered the Election Commission to remove the "Mayor-council" issue from the special election because it proposed not only to vote on the form of government, but also to change the number of wards in the City to six. See Ark. Code Ann. § 14-47-107(c) (1987) for the statutory ballot form. This issue was struck from the ballot, and on August 11, 1992, the citizens voted only on the "Fair Representation"

proposal and defeated it.

The proponents of the "Mayor-council" issue asked the trial court to reconsider the matter, but on July 29th, the trial court refused the motion. On August 21st the "Mayor-council" appellants filed a notice of appeal and asked us to advance the appeal. We set an expedited briefing schedule.

The "Mayor-council" appellants ask this court to order that a special election be held on the issue, to be placed on the November 3, 1992, general ballot. We do not decide whether such relief is possible because we hold that the circuit judge ruled correctly in striking the issue from the August 11th, special election ballot.

█    The appellants argue that the circuit court was without subject-matter jurisdiction to decide the issue. Their argument is based upon Ark. Code Ann. § 14-14-916(a) (1987), which provides in part: "Jurisdiction is vested upon the chancery courts and chancellors in vacation to hear and determine petitions for writs of mandamus, injunctions, and all other actions affecting the submission of any proposed county initiative or referendum petitions." The quoted statute is not a part of the city government chapter; it is a part of the county government chapter. The chapter on the city manger form of government provides that the "initiative and referendum laws of this sate are applicable to cities organized under this chapter." Ark. Code Ann. § 14-47-124 (1987).

█    Amendment 7 to the Constitution of Arkansas, the Initiative and Referendum Amendment, under the title of "Sufficiency," provides in part: "The sufficiency of all local petitions shall be decided in the first instance by . . . the city clerk, . . . subject to review by the Chancery Court." This provision gives the chancery court "jurisdiction only to review the action of the county or city clerk in determining the sufficiency of the petitions." *Rick* v. *Walker*, 237 Ark. 586, 587, 374 S.W.2d 476, 478 (1964). The city clerk reviews the sufficiency of the petitions, but does not have the authority to determine the legal validity of a proposal. The jurisdiction of a suit to question the validity of a proposed measure is in circuit court. *Catlett* v. *Republican Party*, 242 Ark. 283, 413 S.W.2d 651 (1967). Thus, we affirm the circuit court's exercise of jurisdiction in this case.

■ On the merits of the case, appellants argue that the trial court erred in ruling that a statute governs this case and, in addition, that trial court erred in construing the statute. The trial court held that Ark. Code Ann. § 14-47-107(c) (1987) provides that the citizens of a city may vote only for or against the proposition to reorganize the city under the aldermanic form of government and that the statute does not provide for voting to change the number of wards and aldermen. The trial court held, "The statute provides that the *only* issue to be presented is the question of whether to organize under the aldermanic form." The trial court quoted a portion of the statute and found as follows:

(e) If the majority of the votes cast on the issue shall be in favor thereof, the city shall thereupon proceed to the election of all the City officials who were subject to election in the City immediately prior to the date on which the City was organized under the management form of City government. [Ark. Code Ann. § 14-47-107(e) (1987).]

The Court finds that the petitions and the ballot calling for the establishment of six wards are beyond statutory authority. . . .

We have no hesitancy in affirming the trial court's interpretation of the statute. The language of the statute is clear. In addition to the passage quoted by the trial court, the statute provides:

[T]he ballots *shall read:*

"FOR the proposition to organize this city under the aldermanic form of government . . . . . . . . . . . . . . . . . . ☐

AGAINST the proposition to organize this city under the aldermanic form of government . . . . . . . . . . . . . . . . ☐ ".

Ark. Code Ann. § 14-47-107(c) (1987) (emphasis added).

This interpretation is reinforced by two additional sections of the code—Ark. Code Ann. §§ 14-61-109 and 14-43-311 (1987 & Supp. 1991). Section 14-61-109 provides that under the city manager form of government, the county election commission shall divide the territory of the city into wards, and section 14-43-311 provides that if a city has the aldermanic form of government, the city council can redistrict the wards by adding, combining, or

changing ward boundaries.

■ Appellants also argue that the statute cited by the trial court does not govern this initiative procedure, but rather is governed by Amendment 7 to the Arkansas Constitution. There is not merit in the argument for two distinct reasons. First, the argument was not presented to the trial court. The appellants did make two arguments concerning Amendment 7, but neither of those arguments were related to whether it or the statute governed this procedure. They argued that Amendment 7 deprived the circuit court of jurisdiction and that Amendment 7 provided a procedure for competing issues to be on the same ballot, but they never contended that the statute cited by the trial court did not govern this attempt to change the form of city government. We will not consider an argument presented on appeal for the first time. Second, we have expressly ruled that a statute very similar to the one at issue was "wholly independent" of Amendment 7. In *Dingle* v. *City of Eureka Springs*, 242 Ark. 382, 382-83, 413 S.W.2d 641, 641 (1967), we said:

> In *Knowlton* v. Walton, 189 Ark. 901, 75 S.W.2d 811 (1934), we held that such a procedure as petitioners are here following was wholly independent of the Initiative and Referendum Amendment to the Constitution, and that the election called for under the act there involved was not controlled by the election provisions of Amendment 7. . . . There is nothing in the Initiative and Referendum Amendment limiting the power of the legislature to pass an act authorizing a city to change its form of government at a special election to be called by its mayor on the petition of a certain number of voters therein.

Accordingly, we affirm the trial court's ruling that the statute governed the validity of the ballot procedure and that the proposal was invalid under the statute.

■ In a post-trial motion, appellants asked the trial court to rewrite the proposed ballot form and order the election commission to place the proposal on the ballot as rewritten by the trial court. The trial court declined to do so and cited the case of *State* v. *Phillips*, 176 Ark. 1141, 5 S.W.2d 362 (1928). Appellants argue that the trial court erred in refusing to rewrite the proposed ballot form and in refusing to order the election commission to

place the rewritten proposal on the ballot. However, appellants cite no authority for their argument, and it is not readily apparent to us that this is an appropriate function of the judicial branch of government. Assignments of error, unsupported by convincing argument or authority, will not be considered on appeal, unless it is apparent without further research that they are well taken. *Dixon* v. *State*, 260 Ark. 857, 545 S.W.2d 606 (1977).

Affirmed.

BROWN, J., concurring.

ROBERT L. BROWN, Justice, concurring. I agree with the result in this case but for different reasons than those stated in the opinion.

The circuit judge removed the mayor-council issue from the ballot on the stated basis that there was no statutory authority for calling a special election establishing six wards. The operative statute for changing a city-management government back to the aldermanic form is Ark. Code Ann. § 14-47-107 (1987). Part of that statute speaks of elections, such as we have here, of "*all of the city officials* who were subject to election in the city immediately prior to the date on which the city was organized under the management form of city government." (Emphasis added.) Ark. Code Ann. § 14-47-107(e) (1987). Prior to Little Rock's present structure of government, the city had a mayor-council form with aldermen elected from five wards. Now Little Rock has seven directors elected at large.

I would interpret the statute to include aldermen as "city officials" in accord with the current number of directors which would permit their election, as the appellants request, with six elected by wards and one (the mayor) elected at large. Clearly, we cannot construe a statute to reach an impractical result. *See Cotham* v. *State*, 291 Ark. 401, 725 S.W.2d 548 (1987). If we limited the elections of aldermen to five wards as opposed to six, we might be foreclosing the possibility of ever returning to that form of government. That is a circumstance which the General Assembly never contemplated.

Moreover, the mayor's proclamation of July 1, 1992, calling for this special election, was in accord with the formal statutory requirements of Ark. Code Ann. § 14-47-107(c):

ON THE QUESTION OF ORGANIZING THE CITY OF LITTLE ROCK UNDER THE ALDER-MANIC FORM OF GOVERNMENT (MAYOR AND COUNCIL); WHEREBY A MAYOR IS ELECTED AT LARGE BY A MAJORITY OF THE VOTERS; AND WHEREBY SIX WARDS WILL BE ESTAB-LISHED WITHIN THE CITY WITH TWO (2) COUNCIL POSITIONS PER WARD

FOR the proposition to organize this City under the aldermanic form of government ☐

AGAINST the proposition to organize this City under the aldermanic form of government ☐

The circuit judge describes a different ballot title prepared by the Election Commission in his order, but the record itself does not contain that ballot title.

The City of Little Rock, in its brief filed as amicus curiae, offers a different rationale for affirming the circuit judge, which I would adopt. We have held in a case where competing petitions were filed to change city government that it was the mayor's duty to call the election on the first legal petition filed before him and not on the later petition. *Knowlton* v. *Walton*, 189 Ark. 901, 75 S.W.2d 811 (1934). The reasoning behind such a holding is obvious. Competing petitions on the same subject would be unduly confusing to the electorate. Moreover, if both petitions were successful at the polls, which would take precedence? Dual petitions would be cumbersome and invite litigation.

Common sense militates in favor of placing only the first legally filed petition on the ballot. In this case that was the petition by the Fair Representation Campaign Committee.

The circuit court reached the right result but for the wrong reason. *Summers* v. *Chevrolet* v. *Yell County*, 310 Ark. 1, 832 S.W.2d 486 (1992). Accordingly, I concur.