Tammy MORRISON, Administratrix of the Estate of Sandra
Kay Finsel, Deceased *v.* Charles A. JENNINGS, M.D., and
Munir Zufari, M.D.

96-1453                                    943 S.W.2d 559

Supreme Court of Arkansas
Opinion delivered April 28, 1997
[Petition for rehearing denied June 2, 1997.*]

---

\* GLAZE and BROWN, JJ., would grant.

*Charles Karr* and *James R. Filyaw*, for appellant.

*Warner, Smith & Harris, PLC,* by: *Douglas O. Smith, Jr.,* for appellee Charles A. Jennings, M.D.

*Ledbetter, Hornberger, Cogbill, Arnold & Harrison,* by: *Charles R. Ledbetter, R. Ray Fulmer II,* and *J. Michael Cogbill,* for appellee Munir Zufari, M.D.

DONALD L. CORBIN, Justice. Appellant Tammy Morrison, Administratrix of the Estate of Sandra Kay Finsel, appeals the order of the Sebastian County Circuit Court, Greenwood District, granting summary judgment to Appellees Dr. Charles A. Jennings and Dr. Munir Zufari and dismissing with prejudice her wrongful-death action against them. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(1), (15), and (17) (as amended by *per curiam* July 15, 1996). Appellant raises five points for reversal. We find no error and affirm.

*Facts and Procedural History*

The following facts are provided in Appellant's initial complaint filed on July 11, 1994. On April 15 and 18, 1992, Appellee Dr. Zufari saw the decedent in his clinic in Mansfield, Arkansas, for pain in her back, pain and discomfort in her chest which radiated to her back, shortness of breath, and numbness in her arms. The decedent was subsequently admitted to the Crawford Memorial Hospital in Van Buren, Arkansas, on April 27, 1992, where she underwent surgery on her gallbladder, a laparoscopic cholecystectomy, performed by Dr. Zufari the following day. On April 29, 1992, the decedent was discharged from the hospital, but, for unknown reasons, Dr. Zufari did not dictate his discharge summary of the patient until August 30, 1992. The decedent was admitted to St. Edward Mercy Medical Center in Fort Smith, Arkansas, by Dr. Zufari on May 2, 1992, and subsequently discharged on May 8, 1992. The decedent was later readmitted to St. Edward Mercy Medical Center on May 12, 1992, where she remained until her death on July 11, 1992.

Appellant alleged in her first complaint that during the decedent's hospitalization at St. Edward Mercy Medical Center, it was discovered that she had suffered at least two heart attacks prior to and at the time of her gallbladder surgery by Dr. Zufari. Appellant alleged that Dr. Zufari was negligent in his care of the decedent, thus, causing her wrongful death. None of the above-referenced dates contained in Appellant's complaints were disputed by Dr. Zufari.

An amended complaint was filed on August 26, 1994, naming Appellee Dr. Jennings as a defendant. Specifically, Appellant alleged that the decedent was seen by Dr. Jennings on April 27, 1992, for consultation, and that Dr. Jennings had cleared her for surgery. Appellant alleged that Dr. Jennings was negligent in his care of the decedent. In his answer, Dr. Jennings admitted that he did see the decedent on that date and that he issued a consultation report. None of the relevant dates in the amended complaint were disputed by Dr. Jennings.

On March 7, 1996, Appellees moved separately for summary judgment on the ground that Appellant's claim was barred by the

two-year statute of limitations applicable to medical malpractice actions as provided in Ark. Code Ann. § 16-114-203 (Supp. 1991).

In her response, Appellant argued that summary judgment was not appropriate for several reasons, including the following: (1) The claims of the decedent and Ashley Finsel, the decedent's minor heir, were preserved by the general savings clause; (2) the Medical Malpractice Act is special legislation in violation of Amendment 14 of the Arkansas Constitution; (3) the statute of limitations for medical malpractice claims as applied in wrongful-death actions denies equal protection of the law in violation of both the Arkansas and United States Constitutions; (4) the statute of limitations did not begin to run against Dr. Zufari until he dictated his discharge summary on August 30, 1992; and (5) this court's opinion in *Hertlein v. St. Paul Fire & Marine Ins. Co.*, 323 Ark. 283, 914 S.W.2d 303 (1996), should not be followed or should, in the alternative, be overruled.

On March 28, 1996, after both motions for summary judgment, as well as Appellant's response thereto, had been filed, Appellant filed a second amended complaint, this time alleging that Dr. Zufari had fraudulently concealed his negligence. The Appellant alleged that by not dictating his discharge summary until after the decedent's death, and by including in that summary a statement referencing Dr. Jennings's report, which Dr. Zufari allegedly knew to be false, Dr. Zufari had fraudulently concealed his negligence. Appellant alleged that because Dr. Zufari knew that the statement by Dr. Jennings was false, its inclusion in his report constituted fraudulent concealment of his own negligence in the care and treatment of the decedent.

In an order filed August 19, 1996, the trial court granted summary judgment to both Appellees on the bases that there were no genuine issues of material fact left to be resolved and that Appellant's cause of action was barred by the statute of limitations. The trial court's order reflected that the cause of action was dismissed with prejudice. This appeal followed.

### Standard of Review

■ Summary judgment is to be rendered only in those instances where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ARCP Rule 56(c); *Pastchol v. St. Paul Fire & Marine Ins. Co.*, 326 Ark. 140, 929 S.W.2d 713 (1996). The burden of sustaining a motion for summary judgment is the responsibility of the moving party. *Pastchol*, 326 Ark. 140, 929 S.W.2d 713. On appeal, we view all proof submitted in a light most favorable to the non-moving party, with any doubts or inferences resolved against the moving party. *Id.*

### Ashley Finsel's Claim

■ Appellant contends that her claim was not barred by the statute of limitations because Ashley Finsel's claim could not be barred until she reached the age of twenty-four years as provided in Ark. Code Ann. § 16-56-116(a) (1987). Ashley, who was eight years old at the time of the decedent's death, is the decedent's minor granddaughter of whom the decedent was legal guardian up to the time of her death, when Appellant was appointed as Ashley's guardian. Appellant does not contend that the suit instituted below was filed by her in her capacity as legal guardian of Ashley. Rather, it is evident from the pleadings that Appellant brought this suit in her capacity as administratrix of the decedent's estate. Thus, because Ashley is not a party to the suit, we do not reach the merits of this argument. *See* ARCP Rule 17(b); *Williams v. State*, 320 Ark. 67, 894 S.W.2d 923 (1995).

### Special Legislation

■ Appellant argues that the Medical Malpractice Act is special legislation in violation of Amendment 14 to the Arkansas Constitution. Appellant raised this argument below in her response to Appellees' motions for summary judgment. We do not reach the merits of this claim, as it is evident from the abstract that Appellant did not obtain a ruling from the trial court on this

issue. In its order, the trial court merely stated that there was no genuine issue of material fact and that the claim was barred by the statute of limitations. Such a ruling does not sufficiently address Appellant's constitutional claim. This court has repeatedly stated that the failure to obtain a ruling on an issue at the trial court level, including a constitutional issue, precludes a review of the issue on appeal. *See, e.g., Wooten v. State,* 325 Ark. 510, 931 S.W.2d 408 (1996); *Technical Servs. of Ark., Inc. v. Pledger,* 320 Ark. 333, 896 S.W.2d 433 (1995); *Parmley v. Moose,* 317 Ark. 52, 876 S.W.2d 243 (1994).

### Equal Protection

Appellant argues that our application of the two-year medical malpractice statute of limitations to wrongful-death actions violates notions of due process and equal protection under the federal and state constitutions. Appellant additionally argues that such application also violates the "open court" provision contained in Article 2, Section 13, of the Arkansas Constitution, which provides that all persons are entitled to a certain remedy in the law and ought to be able to obtain justice freely.

Appellant raises her argument concerning this state's "open court" policy for the first time on appeal and, as such, we do not address it. *Douthitt v. Douthitt,* 326 Ark. 372, 930 S.W.2d 371 (1996). We also decline to address the merits of Appellant's equal protection and due process argument for two reasons. The first reason is that the abstract does not reflect that Appellant ever obtained a ruling on her constitutional argument from the trial court. As previously stated, we do not reach issues not ruled upon below, even constitutional issues.

The second reason we do not address this argument is that Appellant lacks standing to raise this issue because she is not a member of the class of persons she claims will be deprived of due process and equal protection of the law, namely those persons with claims on behalf of persons who died as the result of a medical injury more than two years from the date of the injury. In order for a litigant to have standing to challenge the constitutionality of a law, it must be unconstitutional as applied to him.

*Medlock v. Fort Smith Serv. Fin. Corp.*, 304 Ark. 652, 803 S.W.2d 930 (1991). The general rule is that one must have suffered injury or belong to a class which is prejudiced in order to have standing to challenge the validity of a law. *Id.* Constitutional rights are personal rights and may not be raised by a third party, although there is a narrow exception for cases in which the issue would not otherwise be susceptible of judicial review and it appears that the third party is sufficiently interested in the outcome that the interest of the party whose constitutional rights were allegedly deprived would be adequately represented. *Id.* That exception does not apply here. Appellant thus lacks standing to raise this equal protection argument.

### Fraudulent Concealment

Appellant argues that the statute of limitations did not begin to run on her claim against Appellee Dr. Zufari until he had dictated his discharge summary on August 30, 1992, approximately one and one-half months after the decedent's death. Appellant makes two separate, unrelated arguments in support of this point.

In the first instance, Appellant argues that the statute of limitations should have been tolled until the doctor completed his discharge summary because it would be unfair and inequitable otherwise. Appellant then proceeds to analyze her assertion under the continuous-treatment doctrine. We find no similarity between a doctor's failure to dictate an immediate written report and a doctor's continuous treatment of a patient, especially in this case, as the decedent died prior to the time Dr. Zufari completed his report. Appellant's argument that the decedent was under Dr. Zufari's continual treatment even after she had died is clearly not well grounded in law and no authority is offered to support this contention. Assignments of error that are unsupported by convincing argument or authority, will not be considered on appeal where it is not apparent without further research that they are well taken. *Moorman v. Priest*, 310 Ark. 525, 837 S.W.2d 886 (1992).

In the second instance, Appellant contends that Dr. Zufari fraudulently concealed his alleged negligence when he referred to the findings made by Dr. Jennings concerning the

decedent's suitability for surgery. The offending statement in Dr. Zufari's discharge summary reads:

> His impression was cholelithiasis, abnormal EKG without documented evidence of coronary artery disease, and suspect her EKG may well be abnormal variant.

Appellant asserts that this statement concerning Dr. Jennings's finding of an abnormal EKG without documented evidence of coronary artery disease constituted fraudulent concealment because Dr. Zufari was allegedly aware of such documented evidence from a previous testing of the decedent in July 1990. Appellant does not, however, explain how Dr. Zufari's reference to what another doctor concluded rises to the level of an attempt by Dr. Zufari to fraudulently conceal his own alleged negligence. Again, as above, we decline to address this argument because Appellant has cited no convincing authority or argument in support of her allegation.

*Stare Decisis*

Lastly, Appellant argues that we should not apply our holding in *Hertlein*, 323 Ark. 283, 914 S.W.2d 303, or, in the alternative, that we should overrule that decision completely. Appellant offers several reasons for overruling that decision, none of which are persuasive. Since our decision in *Hertlein*, this court has had the opportunity to revisit the issue of whether the two-year statute of limitations found in the Medical Malpractice Act applies to claims involving the death of a person as a result of medical injury in *Pastchol*, 326 Ark. 140, 929 S.W.2d 713.

The facts presented in *Pastchol* are similar to those presented here. In *Pastchol*, the appellant argued that the action was one of wrongful death, not medical malpractice, and that, as such, the trial court should have applied the three-year statute of limitations for wrongful-death actions as provided in Ark. Code Ann. § 16-62-102 (1987), instead of the two-year period for medical malpractice actions found in section 16-114-203. The appellant further asserted that the two causes of action were separate and distinct even though the cause of death in that case was alleged to have resulted from a medical injury. This court upheld its pre-

vious rulings in *Hertlein*, 323 Ark. 283, 914 S.W.2d 303, and *Ruffins v. ER Arkansas, P.A.*, 313 Ark. 175, 853 S.W.2d 877 (1993), concluding that because the language of the Medical Malpractice Act provides that the act supersedes any inconsistent provision of law, the two-year statute of limitations provided in the act applies to any claim of medical injury, regardless of whether the injured person ultimately died as a result. In the present case the alleged cause of the decedent's death is a medical injury; thus, the two-year statute of limitations provided in section 16-114-203 is applicable.

Section 16-114-203 provides in pertinent part:

> (a) Except as otherwise provided in this section, all actions for medical injury shall be commenced within two (2) years after the cause of action accrues.

> (b) The date of the accrual of the cause of action shall be the date of the wrongful act complained of and no other time.

Appellant has not pleaded a specific date when the alleged negligent injury occurred with regard to Dr. Zufari. Instead, the complaints allege that, "[d]uring her hospitalization at St. Edward, it was discovered that the Decedent had suffered at least two heart attacks prior to and at the time of her gallbladder surgery by [Dr. Zufari]." It thus appears that the alleged negligence of Dr. Zufari occurred prior to the time the decedent was admitted to St. Edward Mercy Medical Center. In any event, according to the complaints filed by Appellant, the latest possible date upon which Dr. Zufari could have committed a negligent act while treating the decedent would have been May 2, 1992, the date on which he admitted the decedent to St. Edward Mercy Medical Center following her gallbladder surgery. None of the abstracted complaints states affirmatively that Dr. Zufari had any further contact with the decedent after that date.

As for the claim against Dr. Jennings, the complaints reflect that the only contact he had with the decedent occurred on April 27, 1992. Thus, that appears to be the only possible date on which Dr. Jennings could have committed a negligent act upon the decedent.

■ Applying the two-year statute of limitations found in section 16-114-203, Appellant's claim against both Dr. Zufari and Dr. Jennings is barred because it was not filed until July 11, 1994. For this reason, as well as the reasons stated above, we affirm the trial court's judgment dismissing Appellant's cause of action with prejudice as to both Appellees.

ARNOLD, C.J., GLAZE, and BROWN, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. For the third time in a year, the majority has erred in its application of the two-year statute of limitations to a wrongful-death claim that arose from a medical injury. *See Pastchol v. St. Paul Fire & Marine Ins. Co.*, 326 Ark. 140, 929 S.W.2d 713 (1996); *Hertlein v. St. Paul Fire & Marine Ins. Co.*, 323 Ark. 283, 914 S.W.2d 303 (1996). The cata-lyst for these errant decisions was the court's analysis of the law in *Hertlein v. St. Paul Fire & Marine Ins. Co.* A review of the law to that point reveals the fallacies in the court's opinion from which I respectfully dissent.

Like this case and *Pastchol*, the issue presented in *Hertlein* was whether the two year or three-year statute of limitations applies in a wrongful-death action where the death is allegedly caused by a medical injury. For medical malpractice, "all actions for medical injury shall be commenced within two (2) years after the cause of action accrues." Ark. Code Ann. § 16-114-203(a) (Supp. 1995). The medical malpractice act "applies to all causes of action for medical injury accruing after April 2, 1979, and, as to such causes of action, shall supersede any inconsistent provision of law." Ark. Code Ann. § 16-114-202 (1987). Under the wrongful death act, the action must be commenced "within three years after the death of the person alleged to have been wrongfully killed." Ark. Code Ann. § 16-62-102(c)(1) (Supp. 1995).

In *Matthews v. Travelers Indemnity Ins. Co.*, 245 Ark. 247, 432 S.W.2d 485 (1968), Mr. Matthews sued under medical malprac-tice and wrongful-death theories. The malpractice occurred on September 14, 1964, when the laboratory erroneously reported that tissues taken from Mrs. Matthews were not cancerous. The error was discovered on January 29, 1965, and Mrs. Matthews died on November 28, 1965. Mr. Matthews filed suit on June 14,

1967—nearly three years after the negligent act. This court was forced to determine whether the two-year statute of limitations for medical malpractice or the three-year wrongful-death statute was controlling. Writing for the majority, Justice George Rose Smith offered this analysis:

> In our opinion each statute is partly controlling. It is essential to recognize that two separate causes of action are being asserted by the appellant in his capacity as administrator of his deceased wife's estate. The complaint seeks in part to recover compensation for the physical and mental anguish suffered by Mrs. Matthews before her death. At common law that cause of action would not have survived the death of Mrs. Matthews, but under our survival statute it may be asserted by her personal representative. In that situation the personal representative is asserting the decedent's cause of action and must therefore bring suit within the period allowed by that statute of limitations which would have governed if the injured person had not died. That being the two-year malpractice act in this case, the administrator's attempt to assert Mrs. Matthews cause of action for her physical and mental pain and suffering is barred, because the suit was not filed within two years after the wrongful act complained of.

*Matthews*, 245 Ark. at 249, 432 S.W.2d at 487-88 (citations omitted). We then recognized that the remaining statutory wrongful-death claim, as opposed to the survival claim, was not subject to the medical malpractice two-year limitations period. As a final justification for applying both statutes, we stated that public policy favors applying the longer statute of limitations when the issue is doubtful. *Matthews*, 245 Ark. at 250, 423 S.W.2d at 488.

The Medical Malpractice Act was enacted in 1979 and superseded any inconsistent provision of law. 1979 Ark. Acts 709, § 9; Ark. Code Ann. § 16–114–202 (1987). However, eight years after the enactment of the current Medical Malpractice Act, this court indicated that *Matthews* was still viable. In *Brown v. St. Paul Mercury Ins. Co.*, 292 Ark. 558, 732 S.W.2d 130 (1987) (*Brown I*), a patient at an alcoholism treatment center walked through an unlocked door to the roof of a building and jumped or fell to his death. Nearly three years later, the personal representative sued. We struggled with whether Brown's death was a "medical injury" thereby invoking the two-year medical malpractice statute of limi-

tation. In holding the three-year statute of limitations statute applicable, "we [stood] fast on our ruling in *Matthews*." *Brown I*, 292 Ark. at 561, 732 S.W.2d at 131. We applied *Matthews* despite the fact that it interpreted former law:

> Our wrongful death statute created a new and separate cause of action which could arise if death was caused by any wrongful act and which carries its own statute of limitations as part of that right. For this reason, the medical malpractice statute of limitations is irrelevant when a patient dies from his injuries before the two-year period has run.

*Brown I*, 292 Ark. at 562, 732 S.W.2d at 132. We then reversed the lower court and held that the wrongful-death action was timely filed.

Subsequently, we overruled *Brown I* in *Bailey v. Rose Care Center*, 307 Ark. 14, 817 S.W.2d 412 (1991). In *Bailey*, a nursing home resident left the home unnoticed in his wheelchair and was struck and killed by a pickup truck. Relatives sued, and after the jury returned a verdict for the nursing home, the plaintiffs appealed, challenging the instructions on negligence. In our analysis of the negligence instructions, we looked to the *Brown I* definition of "medical injury." We concluded that the facts in *Brown I* did not fit within the definition of medical injury, and we overruled *Brown I* to that limited extent. *Bailey*, 307 Ark. at 19-20, 817 S.W.2d at 415. The effect of this analysis on *Brown I* was that only the wrongful-death statute of limitations was applicable because the injury was not a "medical injury" and, thus, the injury did not fall within the ambit of the Medical Malpractice Act. The language in *Bailey* did not speak to the *Matthews* rationale in *Brown I*, and as a result, *Matthews* remained unaffected.

We revisited the *Brown* saga in *Brown v. St. Paul Mercury Ins. Co.*, 308 Ark. 361, 823 S.W.2d 908 (1992) (*Brown III*). The issue in this third appeal was whether the case should be dismissed due to the untimely filing of the pleadings. We held that *Brown I* had decided that this was a wrongful-death action and that the three year statute of limitations applied. "Because this is a wrongful death action, compliance with the medical malpractice statutes, including § 16-114-204, is irrelevant. The doctrine of law of the

case clearly applies." *Brown III*, 308 Ark. at 363, 823 S.W.2d at 909. The case was reversed for a trial on the merits. Again, *Brown III* makes no mention of *Matthews*.

At this stage in the case history, *Matthews*, as explained in *Brown I*, is still good law. The break in the *Matthews* position began with a narrow decision in 1993. In *Ruffins v. ER Arkansas, P.A.*, 313 Ark. 175, 853 S.W.2d 877 (1993), the plaintiff filed the complaint after the two-year medical malpractice statute had run but before the three-year wrongful-death statute had run. The complaint alleged that the doctors failed to properly diagnose and treat the deceased, resulting in his death. The doctors moved for a summary judgment on the grounds that the plaintiff had failed to comply with the sixty-day notice of intent to sue. That provision was nullified by our decision in *Weidrick v. Arnold*, 310 Ark. 138, 835 S.W.2d 843 (1992), but in *Ruffins* we applied the notice provision because the law was extant at the time the case was tried. We observed that in light of *Weidrick v. Arnold*, "*this decision has very little significance as a precedent.*" *Ruffins*, 313 Ark. at 177. We implemented the plain language of the medical malpractice act in affirming the trial court's dismissal of the suit for failure to give the requisite notice. Under the statutes in force at the time the case was tried, there was no doubt that the medical malpractice claim was barred. We then addressed the wrongful-death portion of the claim:

> The plaintiff-appellant tacitly asks us to ignore the clear language of the statute by arguing that our cases have recognized that medical malpractice and wrongful death are separate causes of action even though they may arise from the same negligent act and asserts this action is solely for wrongful death. Accordingly, she contends that she did not have to give the "notice of intent to sue" that is required by the Medical Malpractice Act. . . . She bolsters her argument by quoting a sentence of dictum from [*Brown I*] that states the Medical Malpractice Act is irrelevant to wrongful death actions.

*Ruffins*, 313 Ark. at 177-78, 853 S.W.2d at 879. The *Ruffins* court distinguished *Matthews* because:

> [T]hat holding does not decide the issue in this case. The issue here, *regardless of which statute of limitations controls*, is whether the

then required notice provision of the Medical Malpractice Act . . . is applicable. Since this is undisputedly a suit for "medical injury," the Medical Malpractice Act applies, and at the time this case arose, it required the sixty-day notice of intent to sue. The wrongful death statute does not require notice. . . . The Medical Malpractice Act was enacted long after the wrongful death statute was enacted, and the Medical Malpractice Act expressly "supersedes any inconsistent provision of law. . . ." We have no choice on the notice issue as we did when there were two statutes of limitations that were applicable.

*Ruffins*, 313 Ark. at 178, 853 S.W.2d at 879. The court further distinguished *Matthews* and *Brown I* in that after *Bailey* overruled *Brown I*, "the question of whether a wrongful death resulting from medical injury was subject to the period of limitations of the Medical Malpractice Act was an open question, and we had made no holdings whatsoever about the notice issue." *Ruffins*, 313 Ark. at 179, 853 S.W.2d at 880.

The *Ruffins* court, thus, admitted that the case was of little precedential value. The court also stated that it dealt with the notice provision of the medical malpractice act as opposed to the statute of limitations. Within this narrow scope, *Ruffins* dictum was overbroad to the extent it intimates that the wrongful death statutes are inconsistent with the medical malpractice statutes simply because they overlap. As *Brown I* makes clear, the legislature has provided for two separate causes of action in wrongful-death cases, and *Ruffins* should be limited to effect that intent. To interpret the statutes differently would be to say that the General Assembly intended to give with the left hand what it takes away with the right.

Yet that is precisely what happened with our decision in *Hertlein*. Indeed, the majority relied only on *Ruffins* and the general repealer clause in the medical malpractice act when it held that the medical malpractice statute of limitations was exclusive of all causes of actions stemming from a medical injury because the wrongful-death statute of limitations was "an inconsistent provision of law." *Hertlein v. St. Paul Fire & Marine Ins. Co.*, 323 Ark. at 286, 914 S.W.2d at 305. The crux of the *Hertlein* decision rests on its interpretation of the repealer clause. Conspicuously absent

from the opinion is a recitation of the applicable rules of statutory interpretation or an overruling of *Matthews* or *Brown I.*

When interpreting statutes, the first rule of construction is to construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Henson v. Fleet Mortgage Co.*, 319 Ark. 491, 892 S.W.2d 250 (1995). Yet the basic rule of statutory interpretation to which all other interpretive guides must yield is to give effect to the intent of the legislature. *Rogers v. Tudor Ins. Co.*, 325 Ark. 226, 925 S.W.2d 395 (1996); *Henson v. Fleet Mortgage Co., supra.* In ascertaining an act's intent, the appellate court examines the statute historically, as well as the contemporaneous conditions at the time of the enactment, the object to be accomplished, the remedy to be provided, the consequences of interpretation, and matters of common knowledge within the court's jurisdiction. *Rogers v. Tudor Ins. Co., supra; Henson v. Fleet Mortgage Co., supra; City of Little Rock v. AT&T Communications of the S.W., Inc.*, 318 Ark. 616, 888 S.W.2d 290 (1994).

A statute of a general nature does not repeal a more specific statute unless there is a plain, irreconcilable conflict between the two. *Winston v. Robinson*, 270 Ark. 996, 606 S.W.2d 757 (1980); *Patrick v. State*, 265 Ark. 334, 576 S.W.2d 191 (1979). Thus, the treatment of a general repealer clause does not differ from the rules applicable to a repeal by implication. The fundamental rule of that doctrine is that a repeal by implication is not favored and is never allowed except when there is such an invincible repugnancy between the provisions that both cannot stand. *Donoho v. Donoho*, 318 Ark. 637, 887 S.W.2d 290 (1994); *Uilkie v. State*, 309 Ark. 48, 827 S.W.2d 131 (1992). "[A] repeal by implication is accomplished where the Legislature takes up the whole subject anew and covers the entire ground of the subject matter of a former statute and evidently intends it as a substitute, although there may be in the old law provisions not embraced in the new." *Uilkie v. State*, 309 Ark. at 53, 827 S.W.2d at 134, *quoting Berry v. Gordon*, 237 Ark. 547, 376 S.W.2d 279 (1964); *see also Bryant v. English*, 311 Ark. 187, 843 S.W.2d 308 (1992) (constitutional provision). Hence, the older act will be "repealed" if it is apparent that the

latter act was intended to substitute for the prior one. *Uilkie v. State, supra.*

The error in the *Hertlein* decision is that it does not recognize that the statutes of limitations for the separate causes of action can be read harmoniously as is demonstrated by this court's decisions in *Matthews v. Travelers Indemnity Ins. Co., supra,* and *Brown v. St. Paul Mercury Ins. Co. (Brown I), supra.* This court's broad dictum in *Ruffins* does not diminish this fact. In the absence of the General Assembly's specific directive to limit a cause of action for wrongful death, this court erred in producing its own limitation without sufficient justification for doing so. Unfortunately, that error has been compounded by the court's adherence to *Hertlein* in *Pastchol v. St. Paul Fire & Marine Ins. Co., supra,* and now this case.

The question then becomes what effect the time-honored doctrine of *stare decisis* has on the faulty *Hertlein* decision. I turn to this court's discussion of *stare decisis* in 1968:

> This policy of adhering to precedent to give predictability to the law, and to avoid unsettling things, is fundamental to the common law. So too is the power to overrule a line of decisions, even those under which property rights were acquired. *Carter Oil Co. v. Weil,* 209 Ark. 653, 192 S.W.2d 215 (1946). Precedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable. Any rule of law not leading to the right result calls for rethinking and perhaps redoing. *Llewellyn,* Jurisprudence, 217 (1962). The proper limitations on the doctrine of *stare decisis* have ever been recognized by this Court. "Precedent, it is said, should not implicitly govern, but discretely guide . . .", *Roane v. Hinton,* 6 Ark. 525, 527 (1846).

*Parish v. Pitts,* 244 Ark. 1239, 1252, 429 S.W.2d 45, 52 (1968). This court has said that a revision of erroneous case law is preferred "rather than to have the character of our law impaired, and the beauty and harmony of the system destroyed by the perpetuity of error." *Brickhouse v. Hill,* 167 Ark. 513, 519, 268 S.W. 865, 867 (1925), *quoting Whittington v. Flint,* 43 Ark. 504 (1884) (overruling five prior decisions). Later in the *Brickhouse* opinion, this

court commented that it is our duty to correct and not to perpetuate a decision founded in error.

Legislative silence can be a factor in determining the viability of a court's statutory interpretation, but such reliance is treacherous and should not control the outcome. Despite the 1996 *Hertlein* opinion, the General Assembly in its 1997 session failed to offer any pronouncement on this issue one way or the other. However, the General Assembly also took no action after *Brown I*, which reaffirmed the *Matthews* principles. Considering the Legislature's inaction both before and after this court's decisions in *Hertlein* and *Ruffins*, the General Assembly's refusal to speak is entitled to no weight.

*Hertlein* is not based on sound legal principles, and the decision limits a cause of action resulting in horrendous consequences without proper judicial or legislative justification. It is our duty to correct this situation and not to perpetuate a decision founded in error. *Brickhouse v. Hill, supra.*

I respectfully dissent.

ARNOLD, C.J., and GLAZE, J., join.