The Honorable Kathy Webb State Representative Post Office Box 251018 Little Rock, Arkansas 72225-1018
Dear Representative Webb:
I am writing in response to your request for an opinion on several questions concerning potential actions by the City of Little Rock Board of Directors. Specifically, you have enclosed correspondence with your request posing the following questions, which I have repeated verbatim:
 If these measures are passed by the Little Rock Board of Directors as resolutions at an announced future board meeting will they have legal standing under present Little Rock municipal codes, Pulaski county or state statutes?
 1. Board passes a resolution stating that the mayor nominates persons to serve on boards and commissions, subject to confirmation by the Board of Directors [present law gives City Manager the power to nominate, subject to confirmation by the Board of Directors (14-47-120-(4)]. Requires legislation.
 2. Board passes a resolution proposing a future city-wide election that proposes that the Mayor votes as a member of the Board of Directors and can veto actions of the Board, is subject to a Board 2/3 vote override. Requires city wide election (14-61-114). *Page 2 
 3. Board passes a resolution that acknowledges that the office of the Mayor is a full-time position and that it requires a commensurate salary and recommends an increase of 2 staff positions. Requires Board of Directors action.
 4. Board passes a resolution that sets up a future city-wide election that establishes the elimination of the at large ward director positions.
 5. Board passes a resolution that confers the power of hiring and firing the city manager solely to the mayor of Little Rock.
 6. Board passes a resolution that confers the power to hire and fire all city department heads.
 7. Board passes a resolution to change the number of ward [sic] within the boundaries of city Little Rock [sic].
 Will each of these if passed as individual isolated resolutions have legal standing in and of themselves?
 If not, then are there other measures or other steps in the process that are required for each individually or a group of them to establish legal standing under the present codes referred to above?[1]
 RESPONSE
Although the Attorney General is charged with the duty to issue formal opinions on certain questions posed by enumerated officials (A.C.A. § 25-16-706), the Attorney General renders opinions on matters ofstate law, not on the construction of local ordinances or codes. My opinion must therefore be limited to a discussion of the pertinent state statutes implicated by the questions posed. Your questions *Page 3 
pertain to a city with the city manager form of government and a population over 100,000. It is my opinion, in response to your first question, that current state law authorizes the board of directors in such cities to invest the mayor with power to nominate board and commission members. In my opinion state law does not currently authorize the proposition put forth in your second question. Under current law the mayor may not be given both the power to vote as a member of the board of directors and veto power. If the mayor is given veto power, he will only have a vote in the case of a tie vote. In response to your third question, the applicable state statute is A.C.A. § 14-61-110, which authorizes the local voters to approve compensation, which may thereafter be set by ordinance of the board. Additional staff positions would presumably be addressed through the budget process. In my opinion, in response to your fourth question, a city-wide election to authorize the elimination of at-large board positions is authorized by A.C.A. § 14-61-114. This statute does not appear to authorize a simultaneous reduction in the number of board members if that is the intent of your fourth question. In response to your fifth question, current statutes in all likelihood authorize the board to confer the power to hire and fire the city manager on the mayor. In response to your sixth question, the board may invest the mayor with the power to hire and fire department heads under the same provisions applicable to the appointment and nomination of board and commission members discussed in response to Question One. In response to your seventh question, assuming that this question involves only a change in the number of wards and not the method of selecting directors under A.C.A. § 14-61-107, in my opinion the relevant state statute in this regard is A.C.A. § 14-61-105. In response to your final two questions, concerning the individual legality of such proposals, or other required steps, I cannot speculate as to the myriad permutations presented by these questions, or offer private legal advice on how to achieve the stated objectives. Resort to private counsel would be necessary for any such advice.
It is necessary to address two preliminary issues prior to addressing the specific questions posed.
First, the correspondence you have attached inquires as to whether the listed actions would have "legal standing" under "present Little Rock municipal codes, Pulaski county or State statutes." I assume that this reference to "legal standing" inquires as to whether the actions would be lawful. In this regard, my opinion is limited to an analysis of state law. Although the Attorney General is charged with the duty to issue formal opinions on certain questions posed by enumerated officials (A.C.A. § 25-16-706), the Attorney General renders opinions on matters *Page 4 
of state law, not on the construction of local ordinances or codes. Op. Att'y Gen. 2001-374. See also, Op. Att'y Gen. 2004-152 (limiting the issues posed therein to state law and stating that the potential applicability of local measures would need to be addressed locally).See also Op. Att'y Gen. 2004-235 (noting that the opinion rendering function of this office is not an appropriate vehicle for interpreting local ordinances). The resolution of such local matters must be handled at the local level. My opinion will therefore be restricted to a discussion of how state law may impact the issues raised in the correspondence you have attached.
Second, each question posed inquires as to the legality of the Little Rock Board of Directors passing a "resolution" to effect a certain outcome. Although it is sometimes stated that a municipal governing body can act either by ordinance or resolution (see, e.g., Op. Att'y Gen.2006-017), this is generally only true "if the mode of the exercise of a power is not prescribed by the act or charter conferring the power or in some other statute. . . ." Id. quoting 62 C.J.S. MunicipalCorporations, § 158. As will be seen from the discussion below, many of the applicable statutes relating to the questions posed require action by ordinance, rather than resolution. To avoid the necessity of restating this proposition under each question below, I will simply note from the outset that a "resolution" may not be sufficient to effect the action described in the questions below, and an "ordinance" may be necessary.
Question 1 — Board passes a resolution stating that the mayornominates persons to serve on boards and commissions, subject toconfirmation by the Board of Directors [present law gives City Managerthe power to nominate, subject to confirmation by the Board of Directors(14-47-120-(4)]. Requires legislation.
In my opinion state law, as amended in 2001, currently authorizes the board of directors in cities with the city manager form of government and a population over 100,000 persons to pass an ordinance giving the mayor the power to nominate persons for board and commission appointments. The statute referenced in the question above, A.C.A. § 14-47-120 (Supp. 2005), is captioned "Powers and duties of city manager." Subsection 4 of that statute, as amended by Act 1473 of 2001, provides as follows:
 (4)(A)(i) Except as provided in subdivision (4)(A)(ii) of this section, [the city manager] shall nominate, subject to confirmation by the board, persons to fill all vacancies at any time occurring in *Page 5 
any office, employment, board, authority, or commission to which the board's appointive power extends.
 (ii) If the mayor has appointment power pursuant to § 14-47-108(a)(2)(C), the nominations shall be made by the mayor.
The statute above addresses the filling of vacancies in the listed offices and employments. The 2001 amendment added the emphasized language to the statute. The statute referred to within subsection (4)(A)(ii) above, A.C.A. § 14-47-108(a)(2)(C) (Supp. 2005), addresses appointments made after the expiration of a term. It provides that:
 (C)(i) Every other executive officer or executive employee of the city, including, without limiting the foregoing, the city purchasing agent and the members hereinafter called "board members" of every other municipal board, authority, or commission, whether the office, employment, board, authority, or commission exists under statute or under any ordinance or resolution, whose official term of office or employment is fixed by statute, ordinance, or resolution, shall serve until the expiration of the term so fixed, after which the position held by each such executive officer, executive employee, or board member shall be filled through appointment by the board of directors, the appointees to hold at the will of the board. However, in cities with the city manager form of government having a population of more than one hundred thousand (100,000) persons, according to the most recent federal decennial census, the appointments shall be made by the mayor and appointees shall hold at the will of the mayor, if the mayor is authorized to make the appointments by:
 (a) The board of directors, by ordinance;
 (b) An initiated measure, adopted pursuant to Arkansas Constitution, Amendment 7. If the authority is vested by an initiated measure, the board of directors shall not have the power to rescind the authority.[2] *Page 6 
See also A.C.A. § 14-47-131 (Supp. 2005), as amended by Act 1473 of 2001
(adding language authorizing mayoral appointments to newly created
boards and commissions where the mayor has the power of appointment under A.C.A. § 14-47-108(a)(2)(C)).
This statute was apparently originally adopted to govern theinitial reorganization to the city manager form of government, but presumably the amendment above, which currently applies only to the City of Little Rock, applies even after such initial reorganization, because otherwise, it could have no applicability to any city. The City of Little Rock has had a city manager form of government since 1957.See Moorman v. Lynch, 310 Ark. 525, 837 S.W.2d 886 (1992). The legislature is not presumed to have done a vain and useless thing.Phillips Petroleum Company v. Heath, 254 Ark. 847, 497 S.W.2d 30 (1973). In my opinion, therefore, state statutes currently authorize a board of directors in a city with the "city manager" form of government and a population over 100,000 to pass an ordinance authorizing the mayor to make appointments or nominate persons for appointment to city boards and commissions.[3]
 Question 2 — Board passes a resolution proposing a future city-wideelection that proposes that the Mayor votes as a member of the Board ofDirectors and can veto actions of the Board, is subject to a Board 2/3vote override. Requires city wide election (14-61-114).
The question above proposes that the mayor both vote as a member of the board of directors and exercise veto power. In my opinion a board of directors in a city with the city manager form of government may refer to city electors the question of giving the mayor veto power, subject to a 2/3 override by the board, but if this power is granted, under current state law, the mayor would only have power to vote in the case of a tie vote. As the question above notes, the issue is governed by A.C.A. § 14-61-114 (Repl. 1998), which provides in relevant part[4] that: *Page 7 
 (d)(1) The board of directors of any city operating under the management form of government may by ordinance refer to the electors the issue of electing the mayor from an at-large board position, or the issue of granting veto power to the mayor, or both.
 (2)(A) In any instance where the mayor of a city operating under the management form of government has a veto power, the board of directors may override the veto by a two-thirds (2/3) vote of the number of members of the board.
 (B) Mayors who have the veto power shall be entitled only to vote in case of a tie vote.
In my opinion therefore, a board resolution proposing an election to authorize the mayor to vote as a member of the board and to exercise veto power would be contrary to current state law.
Question 3 — Board passes a resolution that acknowledges that theoffice of the Mayor is a full-time position and that it requires acommensurate salary and recommends an increase of 2 staff positions.Requires Board of Directors action.
With regard to the first portion of this question, regarding the mayor's salary, the applicable state statute is A.C.A. § 14-61-110
(Repl. 1998), which provides as follows:
 Neither a director nor the mayor of the city shall receive any compensation for his services unless authorized by the voters of the city at a special or general election. Following such authorization, the board of directors, by ordinance, shall set such compensation pursuant to the provisions of Arkansas Constitution Amendment 56, as may be amended, provided that no ordinance setting compensation shall contain an emergency clause.
I am not aware of what previous action local voters or the board of directors have taken in this regard. Again, this is a matter for local determination. With regard to the second portion of this question, regarding additional staff positions, presumably the addition of staff members would be undertaken through the budgetary process initiated by the city manager under A.C.A. § 14-47-120(6) *Page 8 
(requiring the city manager to "prepare the municipal budget annually and submit it to the board for its approval or disapproval . . .").
Question 4 — Board passes a resolution that sets up a future city-wideelection that establishes the elimination of the at large ward directorpositions.
I am uncertain whether this question proposes the elimination of such positions altogether, which would also have the effect of reducing the number of directors, or whether it proposes the conversion of these at-large director positions to ward positions. In either case, this proposal would have the effect of changing the method of selecting directors. The method would change from a mixture of at-large and ward-based directors to an all-ward system. An election to change the method of selecting directors is authorized under A.C.A. § 14-61-114, which provides in pertinent part that:
 (a)(1) Notwithstanding any other provision, the board of directors in a city operating under the management form of government may, by a two-thirds (2/3) vote of all the members, including the mayor, refer to a special or general election, for approval by a majority of the qualified electors voting on the issue, one (1) of the options set forth in § 14-61-107, provided no election on a board-referred option has been held within the previous two (2) years.
One of the "options set forth in § 14-61-107" is "All members of the board of directors elected from wards." A.C.A. § 14-61-107(4) (Repl. 1998). This statute does not appear to contemplate, however, any simultaneous reduction in the number of directors. Cf., e.g., Moorman v.Lynch, 310 Ark. 525, 837 S.W.2d 886 (1992) (holding that A.C.A. §14-47-107, although authorizing the reorganization of city government from city manager form to an aldermanic form, does not authorize a simultaneous change in the number of wards and aldermen).
Question 5 — Board passes a resolution that confers the power ofhiring and firing the city manager solely to the mayor of LittleRock.
The applicable state statute regarding this question is A.C.A. §14-47-119 (Supp. 2005), which is captioned "Employment of city manager." It provides as follows: *Page 9 
 (a)(1)(A) The initial board of directors, as promptly as possible after effecting its organization, shall employ a city manager.
 (B) However, in cities with the city manager form of government having a population of more than one hundred thousand (100,000) persons according to the most recent federal decennial census, the mayor may be authorized to employ a city manager. The mayor may be authorized by:
 (i) An ordinance of the initial board; or
 (ii) An initiated measure, adopted pursuant to Arkansas Constitution, Amendment 7, authorizing the mayor to employ a city manager. If the authority is vested by an initiated measure, the board shall not have the power to rescind the authority.
Subsection (a)(1)(B)(i) above authorizes the "initial" board to pass an ordinance giving the mayor the power to appoint the city manager. This authority, therefore, is not expressly vested by A.C.A. § 14-47-119 in a subsequent board. In addition, it is unclear whether a subsequent board would have this power under the broad language of A.C.A. § 14-47-108, regarding appointments, where A.C.A. § 14-47-119 more specifically addresses the appointment of the city manager. Ordinarily, where a special act applies, it excludes the operation of a general act upon the same subject. Lawson v. State, 295 Ark. 37, 746 S.W.2d 544 (1988). Again, however, the power granted to the board by A.C.A. §14-47-119(a)(1)(B)(i) would be meaningless unless construed to apply to a subsequent board. Subsection (a)(1)(B) only currently applies to the City of Little Rock. The amendment adding this subsection to the statute (by Act 1790 of 2001), could have no applicability to any other "initial" board. There has not been an "initial" board in the City of Little Rock since 1957. The primary rule of statutory construction is to give effect to the intention of the legislature. Knowlton v. Ward,318 Ark. 867, 889 S.W.2d 721 (1994). It is possible, therefore, that this statute would be interpreted as applying to even subsequent boards in such cities.[5] As a consequence, to the extent the subsection is constitutional, it in all likelihood authorizes the board to pass an ordinance to allow the mayor to employ the city manager. *Page 10 
With regard to any power to fire the city manager, subsection (e) of this same statute provides that "The board, on the vote of a majority of its elected membership, or the mayor, if authorized pursuant tosubsection (a) of this section, may terminate the city manager's employment at any time, either with or without cause." (Emphasis added).
Question 6 — Board passes a resolution that confers the power to hireand fire all city department heads.
Although it is not specified, presumably this question inquires as to the legality of board action investing the mayor with power to hire and fire all department heads. In my opinion the same statutes are applicable to this question as were applicable in response to the first question posed, concerning board and commission appointments.See A.C.A. §§ 14-47-108(a)(2)(C); 14-47-120(4) and 14-47-131.
Question 7 — Board passes a resolution to change the number of ward[sic] within the boundaries of city Little Rock [sic].
Assuming that this question involves only a change in the number of wards and not the method of selecting directors under A.C.A. §14-61-107, in my opinion the relevant state statute in this regard is A.C.A. § 14-61-105 (Repl. 1998), which provides that:
 A city affected by this chapter may choose, by ordinance, to increase or decrease the number of directors, provided that the board of directors, including the office of mayor, shall always be an uneven number and shall never have less than five (5) members.
The process for drawing wards is found at A.C.A. § 14-61-109.
I am uncertain, however, to what extent the board may exercise such power by ordinance where an earlier election fixed the number of directors. This question may depend on the history and local facts pertaining to a particular city, and, again, is a question for local determination.
Question 8 — Will each of these if passed as individual isolatedresolutions have legal standing in and of themselves? *Page 11 
My opinion as to the applicable state law is set out above. As noted, the proposition stated in Question 2 is not consistent with current state law. The power to nominate persons to fill vacancies on boards and commissions (referred to in Question 1), and the power to hire and fire department heads (referred to in Question 6), are governed by the same statutes and thus in my opinion these two powers go hand-in-hand under the statutes. As a consequence, they may not "have legal standing in and of themselves." Beyond these statements, I cannot speculate on the legality of individual board actions.
Question 9 — If not, then are there other measures or other steps inthe process that are required for each individually or a group of themto establish legal standing under the present codes referred toabove?
Again, my opinion as to the applicable state law is set out above. I cannot theorize as to the various permutations that might be undertaken under the seven questions set out above, or speculate as to the legality of any such permutations under state law. Moreover, I am prohibited by statute from the private practice of law. A.C.A. § 25-16-701(Repl. 2002). To the extent the questions appended to your request seek advice on how to achieve the listed objectives, such advice must be provided through private counsel.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] I will note that a bill pending in the current legislative session addresses the issues you raise. See House Bill 2658. It has not become law at this date.
[2] A question may exist as to whether this last sentence of14-47-108(a)(2)(C)(i)(b) is constitutional under the provisions of Arkansas Constitution, art. 5, § 1, "General Provisions" "Amendment and Repeal," which provides that "No measure approved by a vote of the people shall be amended or repealed by . . . any city council, except upon a yea or nay vote on roll call of two-thirds of all the members elected to . . . the city council."
[3] For a case discussing the constitutionality of a similar population classification, see Knoop v. City of Little Rock,277 Ark. 13, 638 S.W.2d 670 (1982).
[4] Subsections (b) and (c) of A.C.A. § 14-61-114, which also address such elections, apply only in cities where all directors are elected by wards.
[5] But see, supra, n. 2 as to the constitutionality of such classifications.